UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority    ____
Send        ____
Enter       ____
Closed      ____
JS-5/JS-6   ____
Scan Only   ____

| | | |
|---|---|---|
| **CASE NO.:** | CV 14-6135 SJO (PJWx) | **DATE:** August 28, 2015 |
| **TITLE:** | Shane Horton v. City of Santa Maria et al. | |

==================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                               Not Present
Courtroom Clerk                                Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**             **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                    Not Present

==================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** [Docket No. 32]

This matter came before the Court on Defendants City of Santa Maria, Santa Maria Police Department, Marc Schneider, Andrew Brice, Jeffrey Lopez, Eligio Lara, David Culver, and Duane Schneider (collectively, "Defendants") Motion for Summary Judgment ("Motion" or "Mot."), filed July 27, 2015 (ECF No. 32).  Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment ("Opposition") on August 3, 2015.  (ECF No. 37.)  Defendants filed a Reply in support of their Motion for Summary Judgment ("Reply") on August 10, 2015.  (ECF No. 40.)  The Court found this matter suitable for disposition without oral argument and vacated the hearing scheduled for August 24, 2015.  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment.

I.      PROCEDURAL AND FACTUAL BACKGROUND

This case involves Section 1983 and related state law causes of action arising out of Plaintiff Shane Horton's attempted suicide while detained by Defendant police officers in a Santa Maria Police Department temporary holding cell.  The following facts are undisputed.  Following his initial arrest for vandalism on December 29, 2012, Shane Horton was placed in a temporary holding cell at Santa Maria Police Department at approximately 7:51 a.m., awaiting an anticipated release on a citation.  (Defendants' Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment (hereinafter, "DSUF") ¶ 1; Plaintiff's Undisputed Facts in Opposition to Motion for Summary Judgment (hereinafter, "PSUF") ¶¶ 8-9.)  Shortly thereafter, Officer Duane Schneider brought Plaintiff to a small Temporary Holding Facility, where Officer D. Schneider confiscated Plaintiff's iPod, wallet, and loose change, but did not remove any of Plaintiff's three belts.  (PSUF ¶¶ 9-10.)

Between 7:51 a.m. and 9:48 a.m. on December 29, 2012, Plaintiff spoke with Officers D. Schneider, Andrew Brice, and unidentified officer(s) while in the cell.  (DSUF ¶ 3.)  Officer D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 14-6135 SJO (PJWx)                DATE:  August 28, 2015

Schneider spoke with Plaintiff from 7:51 a.m. until 8:28 a.m.  (DSUF ¶ 3; PSUF ¶ 29.)  During these conversations, Officer D. Schneider informed Plaintiff that there was a camera monitoring him, and that if Plaintiff needed anything he could waive and someone would come over and look.  (PSUF ¶ 11.)  Plaintiff asked Officer D. Schneider if he could speak to someone because he "felt anxious;" Plaintiff also informed Officer D. Schneider that he was having a "really, really, really rough three weeks straight" and that "nobody listens to [him]."  (PSUF ¶¶ 12, 14, 18; Tr. of SMPD Holding Cell Video Footage Dec. 29, 2012 ("Holding Cell Footage") at 5:23-6:2, 7:14-15.)  Plaintiff also informed Officer D. Schneider of his past drug use, that he was kicked out of his house, that he broke a window in his home and burned cigarettes on his face, that he lost all of his money, that he frequently gets in fights, and that he smokes medical marijuana every day because he developed TMJ.  (PSUF ¶¶ 13, 15-16, 18-20, 22-23.)  Officer D. Schneider asked Plaintiff if Plaintiff had any medical problems, to which Plaintiff responded that he was unaware of any, but reiterated that he was anxious.  (PSUF ¶¶ 24-25.)

Officer D. Schneider left Plaintiff at 8:28 a.m., telling Plaintiff that Officer Brice would arrive in a few minutes.  (PSUF ¶¶ 28-29.)  Plaintiff then reiterated that he was "really anxious."  (PSUF ¶ 28.)  Officer Brice did not return to the facility until 9:46 a.m., though Plaintiff initiated conversations with unidentified officer(s) while he waited for Officer Brice.  (PSUF ¶ 30; Holding Cell Footage at 28:6-29:24.)  At 8:37 a.m., one of the unidentified officers asked Plaintiff if he had any medical problems, to which Plaintiff responded in the negative.  (Holding Cell Footage at 28:11-13.)  When Officer Brice arrived, he removed Plaintiff from the temporary holding cell and took him to a separate interview room.  (PSUF ¶ 31.)  While in the interview room, Plaintiff called his mother, Yvonne Horton, to inform her that hew as in custody and was going to be transferred to another jail.  (PSUF ¶ 32.)  During this call, Plaintiff's mother refused to post bail, but asked to speak with Officer Brice.  (PSUF ¶¶ 32-33; DSUF ¶ 10.)  During the 10-15 minute call between Plaintiff's mother and Officer Brice, Plaintiff's mother revealed that Plaintiff had held a knife to his throat on December 13, 2012–two weeks prior to the arrest–an incident for which Plaintiff was hospitalized, and expressed her frustration with hospital officials who had concluded the following day that Plaintiff "was fine" and that his self-endangering conduct was attributable to drugs.  (PSUF ¶¶ 33-34; DSUF ¶¶ 11-12.)  At the end of the call, Officer Brice told Plaintiff's mother that he would make sure the jail officials were informed of her request that Plaintiff would be watched and that would be safe.  (PSUF ¶ 36; DSUF ¶ 13.)

At some point during the phone call between Plaintiff's mother and Officer Brice, Plaintiff had removed his belt, tied the belt to the temporary cell bars, and hung himself.  (DSUF ¶ 10.)  Approximately 27 minutes elapsed between when Officer Brice left to speak with Plaintiff's mother and when Plaintiff was discovered hanging, and that the phone call between Officer Brice and Plaintiff's mother lasted between 10 and 15 minutes.  (DSUF ¶¶ 11, 17.)  As a result of the hanging, Plaintiff suffered a prolonged period of anoxia which resulted in permanent brain damage.  (PSUF ¶ 41.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-6135 SJO (PJWx)          DATE:   August 28, 2015

At the time of the incident, Santa Maria Police Department policy and Title 15, section 1027 of the California Code of Regulations required a physical inspection of each arrestee at least every sixty minutes. (DSUF ¶ 16.) No evidence has been submitted that, prior to this incident, there had been a suicide attempt in a Santa Maria Police Department Temporary Holding Cell. (DSUF ¶ 19.) None of the officers at Santa Maria Police Department could recall having attended any training in suicide prevention prior to December 29, 2012. (PSUF ¶ 6.)

Santa Maria Police Department Chief Ralph Martin, who had the ability to control police policy as of December 29, 2012, recognized at that time that most jails do not permit belts to be taken inside cells and that belts could be used by inmates or detainees to commit suicide.[1] (PSUF ¶ 44.) As of December 29, 2012, Santa Maria Police Department had a policy stating that arresting or booking officers "should . . . [r]emove belts, shoes and jackets" of those arrested. (DSUF ¶ 2.) Santa Maria Police Department's interpretation of this rule—Santa Maria Police Department Policy Manual rule ("SMPD Policy") 901.8.2(e)—on December 29, 2012 was to leave the decision whether to remove the belts from arrestees in the temporary holding cell to the confining officers. (DSUF ¶ 2.) Prior to December 29, 2012 no officer at the Santa Maria Police Department removed the belts of detainees before placing a detainee in the temporary holding cell at issue. (PSUF ¶ 43.)

On August 5, 2014, Plaintiff brought the instant action. Plaintiff alleges violations of his Eighth and/or Fourteenth Amendment rights by individual Santa Maria Police Department officers, by Santa Maria Police Department, and by the City of Santa Maria. Plaintiff further alleges that each Defendant violated California Government Code section 845.6, and that individual Santa Maria Police Department officials were negligent in their handling of Plaintiff.

Defendants have now moved for summary judgment on all four of Plaintiff's causes of action.

///

II.     DISCUSSION

---

[1] Defendants appropriately object to much of the deposition testimony of Chief Martin to the extent such testimony concerns subsequent remedial measures taken by the Santa Maria Police Department and would be offered to prove negligence or culpable conduct on the part of the department. *See* FRE 407. Chief Martin testified independent of these subsequent remedial measures, however, that he knew that "belts are certainly a possibility" for those "who want to commit suicide" and that "most jails don't allow you to bring your belt in." (Martin Dep., April 6, 2015, at 47:12-19.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  **CV 14-6135 SJO (PJWx)**          DATE:  **August 28, 2015**

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 325.  Rather, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.*  "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'"  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts.").  Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment [and f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence.  *See id.* at 249.  A court is required to draw all inferences in a light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587.

### B. Defendants' Motion for Summary Judgment

Plaintiff's first claim alleges that Defendants Andrew Brice, Marc Schneider, Eligio Lara, David Culver, Jeffrey Lopez, and Duane Schneider, each of whom were officers or custodians at Defendant Santa Maria Police Department, violated Plaintiff Shane Horton's Eighth and/or Fourteenth Amendment rights by "subjecting him to a delay in and/or denial of medical or mental health care and treatment for a serious but treatable medical and/or mental health condition, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 14-6135 SJO (PJWx)                 DATE: August 28, 2015

by failing to supervise him and safeguard him from injury."  (FAC ¶¶ 35, 39.)  Plaintiff alleges that these Defendants' "conduct and omissions" render them individually and personally liable under 42 U.S.C. section 1983, though Plaintiff only seeks "payment of a reasonable sum for attorneys' fees, expert fees and costs pursuant to 42 U.S.C. section 1988" for these alleged violations.  (FAC ¶¶ 40-41.)

Plaintiff's second claim alleges that Defendants City of Santa Maria and Santa Maria Police Department violated Plaintiff's Eighth and/or Fourteenth Amendment rights by failing to "employ adequate policies and procedures in the screening, hiring, training, and retention of officers and staff to provide proper training after hiring such officers and staff, and/or to take adequate steps to ensure that officers and staff were properly trained to monitor and safeguard detainees who presented the risk of a suicide attempt or injuring themselves" and by being "deliberately indifferent" to Plaintiff's constitutional rights.  (FAC ¶¶ 44-46.)

Plaintiff's third claim alleges that each Defendant knew or had reason to know that Plaintiff was in need immediate medical care, supervision and safeguarding, but failed to take reasonable action to summon such medical care in violation of California Government Code section 845.6.  (FAC ¶ 49.)

Plaintiff's fourth and final claim alleges that the individual officer and custodian Defendants were negligent in their duties by "failing to take reasonable action to prevent [Plaintiff] from attempting to commit suicide," failing "to monitor [Plaintiff or to provide care" even though they "had been warned" that Plaintiff was suicidal and recently been committed to a mental health care treatment facility.   (FAC ¶ 54.)

Defendants filed the instant Motion for Summary Judgment seeking judgment as to all four of Plaintiff's claims.  Defendants argue (1) that the individual Defendants are entitled to qualified immunity; (2) that there can be no liability against the municipal Defendants absent a constitutional violation by an individual Defendant; (3) that there is no evidence of *Monell* liability against the municipal Defendants; (4) that Plaintiff's state law claims fail for a lack of legal duty; and (5) that Plaintiff's Government Code section 845.6 claim fails due to the application of statutory immunities.

///
///
///
///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-6135 SJO (PJWx)           DATE:  August 28, 2015

1. Section 1983 Claim Against Defendants Andrew Brice, Marc Schneider, Eligio Lara, David Culver, Jeffrey Lopez, and Duane Schneider

    a. Qualified Immunity and the Constitutional Right to Medical Treatment

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (citing *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (brackets and internal quotation marks omitted). The law does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083 (2011). "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle*, 132 S.Ct. at 2093 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). As a consequence, the Supreme Court has held that "courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all," for "[t]his approach comports with our usual reluctance to decide constitutional questions unnecessarily." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 241 (2009)).

Plaintiff alleges that the individual Defendants violated his right to receive adequate medical care while in the custody of Santa Maria Police Department. Because Plaintiff had not been convicted of a crime, but had only been arrested, his rights derive from the due process clause of the Fourteenth Amendment rather than the Eighth Amendment's protection against cruel and unusual punishment.[2]

---

[2] Plaintiff's first and second causes of action allege that Defendants violated Plaintiff's Eighth and/or Fourteenth Amendment's rights. (FAC ¶¶ 39, 46.) The attempted suicide occurred while Plaintiff was being held in a temporary holding cell at the Santa Maria Police Department. (DSUF ¶ 1; PSUF ¶¶ 8-9.) As such, Plaintiff was a pretrial detainee at the time of the incident, and therefore the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applied to him. *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16 (1979). The Ninth Circuit applies the same standard in both cases, however, and therefore the analysis does not change depending on the source of the constitutional right. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (rejecting the contention that mentally ill pretrial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 14-6135 SJO (PJWx)**          DATE: **August 28, 2015**

The Ninth Circuit has for years held that the Fourteenth Amendment's due process clause imposes, at a minimum, that "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). The Ninth Circuit has clarified that "[t]his duty to provide medical care encompasses detainees' psychiatric needs." *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing *Cabrales v. Cty. of Los Angeles*, 864 F.2d 1454, 1461 (9th Cir.1988), *vac'd*, 490 U.S. 1087 (1989), *opinion reinstated*, 886 F.2d 235 (9th Cir.1989), *cert. denied*, 494 U.S. 1091 (1990)). Thus, in order for jails to comply with their duty not to engage in acts evidencing deliberate indifference to inmates' medical and psychiatric needs, they must provide medical staff who are "competent to deal with prisoners' problems." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

Defendants argue that the individual Defendants should nevertheless be entitled to qualified immunity because "the law pertaining to jail suicides has not been clearly established." (Reply at 10.) In support of their position, Defendants point to the Supreme Court's recent *per curiam* decision in *Taylor v. Barkes*, 135 S.Ct. 2042 (2015), in which the Court reversed the Third Circuit's affirmation of a denial of qualified immunity to prison officials because "an incarcerated person's **right to the proper implementation of adequate suicide prevention protocols** . . . was not clearly established in November 2004 in a way that placed beyond debate the unconstitutionality of the Institution's procedures. . ." *Id.* at 2044 (emphasis added). The Court went on to note that "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols." *Id.* Defendants' argument falls short, however, because Plaintiff's constitutional claims center not solely on the suicide prevention **protocols** followed or not followed, but also by the **conduct** of individual Defendants that allegedly acted with "deliberate indifference" toward Plaintiff after learning of his suicide risk. Because the Ninth Circuit has "long analyzed claims that [law enforcement] officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a 'deliberate indifference' standard," *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (citing *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010)), Defendants' claim that the individual Defendants are entitled to qualified immunity is **DENIED**.

      c.      <u>Deliberate Indifference</u>

A "prison official cannot be liable for deliberate indifference unless he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must **both be aware of facts** from which the inference could be drawn that a substantial risk of serious harm exists, and he

---

    detainees are entitled to greater protection under the Fourteenth Amendment).

CASE NO.:  CV 14-6135 SJO (PJWx)     DATE: August 28, 2015

**must also draw the inference**.'" *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (emphasis added).  Thus, the burden is on the plaintiff to show that the official was "(a) *subjectively aware* of the serious medical need and (b) failed adequately to respond." *Conn v. City of Reno*, 591 F.3d 1081, 1096 (9th Cir. 2010) (citing *Farmer*, 511 U.S. at 828).  "If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188 (citing *Jeffers v. Gomez*, 267 F.3d 895, 914(9th Cir.2001)).  "But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a prisoner's serious medical needs on the basis of either his action or his inaction." *Id.* (citing *Farmer*, 511 U.S. at 842).

The parties do not appear to dispute the objective component of the "deliberate indifference" inquiry; *i.e.*, whether there was "an excessive risk to [Plaintiff's] health or safety."  Previous Ninth Circuit cases have held that the objective component is satisfied where a detainee has attempted suicide.  *See Simmons*, 609 F.3d at 1018.

With respect to the subjective component of the "deliberate indifference" standard, Plaintiff principally alleges that the individual defendants "knew or should have known that [Plaintiff] was suicidal and depressed," and that their knowledge or constructive knowledge satisfies this inquiry.[3] (FAC ¶ 37.)  As is discussed in detail below, Plaintiff has introduced sufficient evidence to create a genuine issue as to whether Andrew Brice acted with "deliberate indifference" toward Plaintiff's risk of suicide by calling into question whether Officer Brice knew that Plaintiff was "actively suicidal" at any point during his detention in the temporary holding cell.  Plaintiff has failed, however, to introduce sufficient evidence to support a claim that the other individual named Defendants–Officers Marc Schneider, Eligio Lara, David Culver, Jeffrey Lopez, and Duane Schneider–were "deliberately indifferent" to Plaintiff's risk of committing suicide, even when all inferences are drawn in in a light most favorable to Plaintiff.

> A.    <u>Defendants Marc Schneider, Eligio Lara, David Culver, and Jeffrey Lopez</u>

With respect to named defendants Marc Schneider, Eligio Lara, David Culver, and Jeffrey Lopez, Plaintiff has submitted no evidence that these individuals interacted with Plaintiff at any point during his arrest or confinement, much less that these individuals knew or should have known that Plaintiff was at risk of committing suicide.  Accordingly, summary judgment in favor of Defendants

---

[3] To the extent Plaintiff argues that the individual Defendants can be liable under 42 U.S.C. section 1983 if they "should have known" Plaintiff was suicidal or depressed, this argument fails because under such a definition the Defendants would be entitled to qualified immunity.  *See Taylor v. Barkes*, 135 S.Ct. 2042, 2044-45 (2015) (indicating that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 14-6135 SJO (PJWx)</u>　　　DATE: <u>August 28, 2015</u>

Marc Schneider, Eligio Lara, David Culver, and Jeffrey Lopez as to Plaintiff's first claim for relief is **GRANTED**.

### B.　　Defendant Duane Schneider

With respect to Officer Duane Schneider, the undisputed evidence, when viewed in a light most favorable to Plaintiff, does not create an inference that Officer Schneider knew that Plaintiff "presented a substantial risk of suicide." *Simmons*, 591 F.3d 1011, 1020 (9th Cir. 2010). The facts reveal that Officer Schneider interacted with Plaintiff between approximately 7:51 a.m. and 8:28 a.m. on the morning of December 29, 2012. (DSUF ¶ 3; PSUF ¶ 29.) During this time, Plaintiff stated on several occasions that he was anxious, that he wished to speak with someone, that he was having a "really, really, really rough three weeks straight," that "nobody listens to [him]," that he used drugs, that he recently broke a window in his home, and that he recently burned cigarettes on his face (PSUF ¶¶ 12-16, 18-20, 22-23), and that these statements caused (or should have caused) Officer Schneider to "know[] and disregard . . . an excessive risk to Plaintiff's health and safety." (Opp. at 17.) However, Officer Schneider testified at his deposition that he did not feel as though Plaintiff "presented some kind of special danger to [him]," was not "acting strangely in any way," and was not warned about Plaintiff before taking Plaintiff to the temporary holding cell. (Opp., Ex. 3 at 31:11-32:2.) Officer Schneider further testified that Plaintiff did not "raise any concerns that he may need – may be seeking mental health help." (*Id.* at 74:10-16.) Moreover, Officer Schneider testified that had he "determined that [Plaintiff was] nondetainable because [he was] suffering from a severe mental disorder," he would not have placed the Plaintiff in a cell, but rather would have placed him in an interview room, would not have left him alone, and would have "called a group called CARES, to come out and do a 5150 evaluation, find out exactly if they're suicidal or if they have schizophrenia or off their medication or any number of things." (*Id.* at 41:24-43:6.) Nor is there evidence that Officer Schneider knew of Plaintiff's previous suicide attempt or spoke with Plaintiff's mother or anyone else about Plaintiff's mental health and well-being.

Indeed, Officer Schneider appears to be even less culpable than defendant Sergeant Warren in *Simmons v. Navajo County, Ariz.* In *Simmons*, plaintiffs accused Sergeant Warren of being "subjectively aware that [plaintiff] Jasper 'presented a substantial risk of suicide' because he 'previously attempted to commit suicide and was on 'suicide watch.'" 591 F.3d 1011, 1020 (9th Cir. 2010). The Ninth Circuit held that the record "belies such an assertion" because it was

> uncontested that Sergeant Warren did not know about Jasper 's previous suicide attempt and never noticed a wrist injury or gauze dressings. He did not know Jasper was suffering from depression and taking antidepressants. He never heard Jasper make a suicidal threat or gesture, and during his interactions with Jasper on July 2, he saw "nothing that would send up a red flag." In short, all he knew was that Jasper was on Level II suicide

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-6135 SJO (PJWx)          DATE:   August 28, 2015

watch, which is designed for emotionally unstable, rather than imminently suicidal, detainees.

*Id.* The Ninth Circuit held that because plaintiffs adduced no evidence that Sergeant Warren knew that Jasper was suicidal, summary judgment in favor of Sergeant Warren was proper.

Like Sergeant Warren, the evidence establishes that Officer Schneider testified in effect that he saw "nothing [in Plaintiff's behavior] that would send up a red flag." Also like Sergeant Warren, there is no evidence that Officer Schneider knew about Plaintiff's suicide attempt. Critically, however, unlike Sergeant Warren, Officer Schneider did **not** know that Plaintiff was on any sort of suicide watch or was emotionally unstable. At best, while Plaintiff's somewhat strange behavior and speech "may have alerted [Officer Schneider] to the possibility of suicide, we cannot say that the magnitude of the risk was 'so obvious that [he] must have been subjectively aware of it.'" *Simmons*, 591 F.3d at 1020 (citing *Conn v. City of Reno*, 591 F.3d 1081,1097 (9th Cir. 2009) (emphasis added)); *see also Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002) (holding that officers cannot be held liable for deliberate indifference unless an inmate "was so obviously mentally ill that the deputies, who had received no training regarding the diagnosis and treatment of mental illness, must have known that [he] was exhibiting symptoms of mental illness" (emphasis added)).

"In the absence of a risk so 'obvious' that [Officer Schneider] must have drawn an impermissible inference," the evidence is insufficient to allow a jury to conclude that his conduct violated Plaintiff's due process rights. *Clouthier*, 591 F.3d at 1247. As a result, summary judgment in favor of Defendant Duane Schneider as to Plaintiff's first claim for relief is **GRANTED**.

### C.     Defendant Andrew Brice

With respect to Officer Andrew Brice, Plaintiff's argues the Officer Brice learned of Plaintiff's recent suicide attempt and was put on notice of Plaintiff's suicidal status after speaking with Plaintiff's mother, and that his failure to monitor Plaintiff after learning of key background facts and Plaintiff's mother's worries constituted "deliberate indifference." In support of this argument, Plaintiff points to the following undisputed facts: during the 10-15 minute call between Plaintiff's mother and Officer Brice, Plaintiff's mother revealed that Plaintiff had held a knife to his throat on December 13, 2012—two weeks prior to the arrest—an incident for which Plaintiff was hospitalized. (PSUF ¶¶ 33-34; DSUF ¶¶ 11-12.) Plaintiff's mother also expressed her frustration with hospital officials who had concluded the following day that Plaintiff "was fine" and that his self-endangering conduct was attributable to drugs. (*Id.*) At the end of the call, Officer Brice told Plaintiff's mother that he would make sure the jail officials were informed of her request that Plaintiff would be watched and that would be safe. (PSUF ¶ 36; DSUF ¶ 13.) Given that approximately 27 minutes elapsed between when Officer Brice left to speak with Plaintiff's mother and when Plaintiff was discovered hanging, and that the phone call between Officer Brice and Plaintiff's mother lasted between 10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-6135 SJO (PJWx)          DATE:   August 28, 2015

and 15 minutes, between 12 and 17 minutes elapsed between the time Officer Brice finished speaking with Plaintiff's mother and when he discovered that Plaintiff had hung himself.  (DSUF ¶¶ 11, 17.)

Given these undisputed facts, a jury could reasonably conclude that Officer Brice (1) was aware of the facts that could lead to an inference that Plaintiff faced a substantial risk of serious harm; (2) in actuality inferred from these facts that Plaintiff faced a substantial risk of serious harm; and (3) notwithstanding having made this inference, failed to adequately respond to this known risk by not monitoring or tending to Plaintiff in a timely fashion after learning of these facts.  *See Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Because there remains a genuine issue of fact as to whether Defendant Andrew Brice acted with deliberate indifference after speaking with Plaintiff's mother, summary judgment in favor of Defendant Andrew Brice as to Plaintiff's first claim for relief is **DENIED**.

  2. <u>Section 1983 Claim Against Defendants City of Santa Maria and Santa Maria Police Department</u>

Plaintiff has proffered two technically separate but highly interwoven theories of municipal liability.  First, Plaintiff argues that, by creating a "discretionary training policy" as opposed to Title 15 mandated training that permits police officers to not remove belts of mentally ill detainees, the municipal Defendants violated Plaintiff's constitutional rights.  Second, Plaintiff argues that the municipal Defendants' failure to adequately train its law enforcement officials amounted to "deliberate indifference" and caused the violation of Plaintiff's constitutional rights.

    a. <u>*Monell* Liability – The Creation of a Discretionary Policy or Custom</u>

Although it is difficult to comprehend the particulars of Plaintiff's first theory of municipal liability,[4] Plaintiff's argument appears to be that, by enacting a "policy" that gives employees sole discretion whether to remove a detainee's belts before confining a detainee to temporary holding cells, the municipal Defendants caused the violation of Plaintiff's constitutional rights.  It is undisputed that, as of December 29, 2012, Santa Maria Police Department had a policy stating that arresting or booking officers "should . . . [r]emove belts, shoes and jackets" of those arrested.  (DSUF ¶ 2.)  It is also undisputed that, as of December 29, 2012, the Santa Maria Police Department's interpretation of this rule--Santa Maria Police Department Policy Manual rule ("SMPD Policy")

---

[4] Plaintiff's theory references "inadequately trained officers," "failure to adopt a policy," and other indicia of the *City of Canton*-type policy discussed in detail below.  (Opp. at 9-10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

**CASE NO.:** CV 14-6135 SJO (PJWx)          **DATE:** August 28, 2015

901.8.2(e)--was to leave the decision whether to remove the belts from arrestees in the temporary holding cell to the confining officers. (DSUF ¶ 2.) It is further undisputed that, prior to December 29, 2012, no officer at the Santa Maria Police Department removed the belts of detainees. (PSUF ¶ 43.)

There are two types of "policies" that can create liability under Section 1983–"formal" and "informal." A formal policy exists when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion). An informal policy or "custom," on the other hand, exists when a plaintiff can prove the existence of a widespread practice that, although not authorized by an ordinance or an express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1989) (plurality opinion) (internal quotation marks omitted). Such a practice, however, cannot ordinarily be established by a single constitutional deprivation, a random act, or an isolated event. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir.1999). Instead, a plaintiff must show a pattern of similar incidents in order for the factfinder to conclude that the alleged informal policy was "so permanent and well settled" as to carry the force of law. *See Praprotnik*, 485 U.S. at 127. Finally, to establish municipal liability under either a formal or informal policy theory, a plaintiff must prove that the policy at issue was the "moving force" behind the constitutional violation; this requirement is necessary to prevent Section 1983 from improperly imposing *respondeat superior* liability. *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 694 (1978).

Whether the alleged "policy" of giving officers discretion to remove detainees' belts is considered "formal" or "informal," the analysis does not change, as the undisputed evidence indicates officer policy was not to remove detainees' belts before placing them in temporary holding cells. To the extent Plaintiff argues that it is not the conferral of discretion, but rather individual officers' *exercise* of that discretion that is a violation of Plaintiff's due process rights, this argument is grounded in the (in)adequacy of Defendants' training, which is discussed in the section immediately below. To the extent Plaintiff argues it is the *conferral of discretion itself* that is a violation of Plaintiff's due process rights (whether or not SMPD Policy 901.8.2(e) permits such discretion), Plaintiff has failed to introduce evidence that such a policy is unconstitutional on its face. More particularly, Plaintiff has failed to introduce any evidence that a policy which permits a detainee–regardless of his or her physical or mental condition–to bring a belt into his or her temporary cell is the "moving force" behind the municipality's violation of the detainee's constitutional right not have officials remain deliberately indifferent to their serious medical needs. Instead, the evidence proffered by Plaintiff supports only the possibility that Defendants' policy is unconstitutional as applied to him. Accordingly, summary judgment in favor of Defendants City of Santa Maria and Santa Maria Police Department as to Plaintiff's claim that the Defendants policy or custom of granting individual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   **CV 14-6135 SJO (PJWx)**              DATE:  **August 28, 2015**

officers discretion whether to remove detainees' belts before placing detainees in temporary holding cells is **GRANTED**.

        b.       *City of Canton* Liability – Failure to Train or Failure to Comply

As noted above, Plaintiff's municipal liability arguments are that the municipal Defendants (1) failed to adequately train their law enforcement employees as to proper suicide detection and prevention methods; (2) failed to comply with the requirements of Title 15 of the California Code of Regulations; and (3) failed to enforce a policy of removing belts from detainees prior to placing them in temporary holding cells.  These arguments are addressed in turn.

As a predicate matter, to impose liability against a municipality under *City of Canton, Ohio v. Harris*, a plaintiff must show: (1) that a municipal employee violated plaintiff's rights; (2) that the municipality has customs or policies that amount to deliberate indifference (as that phrase is defined by *Canton*); and (3) that these policies were the "moving force" behind the employee's violation of plaintiff's constitutional rights, in the sense that the municipality could have prevented the violation with an appropriate policy."  *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1193-94 (9th Cir. 2002) (citing *Amos v. City of Page*, 257 F.3d 1086, 1094 (9th Cir.2001)).

With respect to the first requirement, the Court has granted summary judgment in favor of Defendants with respect to Plaintiff's claim that Officers Marc Schneider, Jeffery Lopez, Eligio Lara, David Culver, and Duane Schneider violated Plaintiff's Fourteenth Amendment rights, and therefore only Officer Andrew Brice could be found to have violated Plaintiff's constitutional rights. Thus, summary judgment that Defendants City of Santa Maria and Santa Maria Police Department cannot be liable under 42 U.S.C. section 1983 in the absence of a finding that Officer Andrew Brice violated Plaintiff's Fourteenth Amendment rights is **GRANTED**.

With respect to the second requirement, the Supreme Court in *City of Canton, Ohio v. Harris* explained that where a plaintiff's theory of liability rests on a municipality's decision not to train its employees, the failure must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  489 U.S. 378, 388 (1989).  Critically, this "deliberate indifference" standard differs from the standard recited in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), in that it is an **objective**, rather than a **subjective** standard.  *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 n.8 (9th Cir. 2002) ("As opposed to the *Farmer* standard, which does not impose liability unless a person has actual notice of conditions that pose a substantial risk of serious harm, the *Canton* standard assigns liability even when a municipality has constructive notice that it needs to remedy its omissions in order to avoid violations of constitutional rights.") Thus, the *City of Canton* "deliberate indifference" standard can be met by proving that municipal defendants had "constructive notice" of the need to remedy omissions or failures.  *Id.*  Importantly, although "[a] pattern of similar constitutional violations by untrained

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 14-6135 SJO (PJWx) | **DATE:** August 28, 2015 |

employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown.*, 520 U.S. 397, 409 (1997), *City of Canton* and subsequent cases have explained that the need to train can be "'so obvious,' that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights." *City of Canton*, 489 U.S. at 390 n.10.

Turning first to Plaintiff's claim that municipal Defendants failed to adequately train their employees as to proper suicide detection and prevention methods, there remains a triable issue of fact as to whether municipal Defendants' need to train its employees was "so obvious" that Defendants' failure to adequately do so could constitute "deliberate indifference" to Plaintiff's Fourteenth Amendment rights.  It is undisputed that **none** of the officers at Santa Maria Police Department could recall having attended **any** training in suicide detection and prevention prior to December 29, 2012.  (PSUF ¶ 6.)  A jury could reasonably infer from this fact and from the other evidence submitted (including the testimony of Yvonne Horton, Andrew Brice and Duane Schneider and the video footage of Plaintiff in the temporary holding cell) that the officers should have recognized that Plaintiff was actively suicidal, but that their lack of training caused them to not recognize his condition and fail to respond in an appropriate manner.  Moreover, there is a "genuine dispute" as to whether Defendants' alleged failure to train could be the "moving force" behind Plaintiff's constitutional injury, particularly given Officer D. Schneider's testimony that, had he believed Plaintiff was suicidal, that he would have "actually physically [sat] there with [Plaintiff]" instead of monitoring him via video surveillance and periodic inspection.  (Stanton Decl., Ex. 4 ("Schneider Dep.") at 42:14-24.)  Accordingly, summary judgment in favor of Defendants City of Santa Maria and Santa Maria Police Department as to Plaintiff's claim that the Defendants failed to adequately train their officers is **DENIED**.

Plaintiff's second argument is that Defendants' alleged failure to comply with sections 1024(e) and 1052 of Title 15 of the California Code of Regulations demonstrates a "deliberate indifference" to Plaintiff's constitutional rights.  Sections 1024(e), however, only apply to "Temporary Holding Facilities," which Title 15, section 1006 defines as "a local detention facility constructed after January 1, 1978, used for the confinement of persons for 24 hours or less pending release, transfer to another facility, or appearance in court."  (15 Cal. Code Regs. § 1006.)  Plaintiff, who bears the burden of proof at trial that Defendants violated Plaintiff's constitutional rights, has adduced no evidence that the temporary holding facility in which the incident occurred was either subject to or in violation of the requirements of Title 15 section 1024(e) as of December 29, 2015. Accordingly, summary judgment in favor of Defendants City of Santa Maria and Santa Maria Police Department as to Plaintiff's claim that Defendants failed to comply with Title 15, section 1024(e) of the California Code of Regulations is **GRANTED**.

Plaintiff has, however, created a genuine dispute as to whether Defendants' alleged failure to "develop written policies and procedures to identify and evaluate all mentally disordered inmates"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 14-6135 SJO (PJWx)**     DATE: **August 28, 2015**

as required by Title 15, section 1052 ("Section 1052") evidenced Defendants' "deliberate indifference" to Plaintiff's Fourteenth Amendment due process rights. Defendants have produced no written policy or procedure regarding the identification and evaluation of mentally disordered detainees, nor have they submitted evidence that individual officers received training in these areas. Instead, it appears that individual officers used *ad hoc* methods to make these determinations, as evidenced by the testimony of Officer D. Schneider, who stated at his deposition that he would "ask [detainees] 'Do you want to hurt yourself or kill yourself'" and if a detainee responds "Yes, I do," then he would visually stay with them until "appropriate personnel [came] out and evaluate[d] them." (Schneider Dep., Feb. 6, 2015, at 42:14-24.) Given this evidence, a reasonable jury could determine that the need for a written policy or procedure regarding suicide identification and detection was so obvious that Defendants' failure to create such a policy or procedure evidenced "deliberate indifference" to Plaintiff's constitutional rights. Moreover, there remains a genuine dispute as to whether the lack of such identification and training protocols could constitute the "moving force" behind Plaintiff's alleged constitutional harm. Accordingly, summary judgment in favor of Defendants City of Santa Maria and Santa Maria Police Department as to Plaintiff's claim that Defendants failed to comply with Title 15, section 1052 of the California Code of Regulations is **DENIED**.

### 3. Government Code Section 845.6 Claim Against All Defendants

Prison employees generally cannot be sued for medical malpractice for failing to treat a prisoner, but California Government Code section 845.6 ("Section 845.6") carves out a key exception for employees who know, or should know, that the prisoner needs immediate care. Section 845.6 provides

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but . . . a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. . . .

As a preliminary matter, Plaintiff alleged, and Defendants do not challenge, Plaintiff's compliance with California Government Code sections 910 and 945.6(a)(2). (FAC ¶¶ 19-20.) Turning to the sufficiency of Plaintiff's claim, Section 845.6 exempts public employees from liability unless an employee "knows or has reason to know" that a prisoner is in need of "immediate" medical care and fails to take reasonable action to summon such care. The Court has already determined that Plaintiff has failed to proffer sufficient evidence that Defendants Marc Schneider, Jeffrey Lopez, Eligio Lara, David Culver, and Duane Schneider had any reason to know Plaintiff was at risk of committing suicide, much less was at "immediate" risk of committing suicide. Accordingly,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-6135 SJO (PJWx)          DATE:   August 28, 2015

summary judgment in favor of Defendants Marc Schneider, Jeffrey Lopez, Eligio Lara, David Culver, and Duane Schneider as to Plaintiff's third cause of action is **GRANTED**.

With respect to Defendant Andrew Brice, the Court determined that Plaintiff introduced sufficient evidence from which a jury could reasonably conclude that Officer Brice had reason to know Plaintiff faced a substantial risk of attempting suicide.  Plaintiff has also introduced sufficient evidence for a jury to reasonably conclude that Officer Brice, who knew or should have known of this risk, failed to take reasonable action to summon medical care.  The knowledge of defendant Brice and the reasonableness of his action not to summon medical care are questions of fact to be determined at trial.  Accordingly, summary judgment in favor of Defendant Andrew Brice as to Plaintiff's third cause of action is **DENIED**.

If an employee is liable under Section 845.6 and "act[s] within the scope of employment," then a public entity employing said employee can likewise be liable under the statute.  Plaintiff has introduced sufficient evidence for a jury to reasonably conclude that Officer Brice violated Section 845.6.  Defendants do not contest that Officer Brice was acting within the scope of his employment during the incident on December 29, 2012.  Accordingly, Plaintiff has introduced sufficient evidence that the municipal Defendants can be held vicariously liable under Section 845.6.  Accordingly, summary judgment in favor of Defendants City of Santa Maria and Santa Maria Police Department as to Plaintiff's third cause of action is **DENIED**.

      4.    <u>Negligence Claim Against Defendants Andrew Brice, Marc Schneider, Eligio Lara, David Culver, Jeffrey Lopez, and Duane Schneider</u>

Plaintiff's fourth cause of action is a state law claim of negligence against each of the individual Defendants.  Plaintiff does not point to any statute imposing a duty or liability apart from California Government Code section 845.6, discussed above.  Plaintiff also does not address the separate claim of negligence in his opposition.  Because Plaintiff has failed to present any evidence to support a separate theory for a state law claim of negligence, Defendants' motion for summary judgment based upon the individual Defendants' negligence is **GRANTED**.

III.    <u>RULING</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment is:

1.    **GRANTED** as it applies to Defendants Marc Schneider, Jeffrey Lopez, Eligio Lara, David Culver, and Duane Schneider's individual and personal capacity liability under 42 U.S.C. § 1983.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

__ : __

CASE NO.:   CV 14-6135 SJO (PJWx)          DATE:   August 28, 2015

2. **GRANTED** as it applies to Defendants City of Santa Maria and Santa Maria Police Department's liability under 42 U.S.C. § 1983 in the absence of a finding that Defendant Andrew Brice violated Plaintiff's Fourteenth Amendment rights under 42 U.S.C. § 1983.

3. **GRANTED** as it applies to Defendants City of Santa Maria and Santa Maria Police Department's liability under 42 U.S.C. § 1983 for the creation of a policy or custom of granting individual officers discretion whether to remove detainees' belts before placing detainees in temporary holding cells.

4. **GRANTED** as it applies to Defendants City of Santa Maria and Santa Maria Police Department's liability under 42 U.S.C. § 1983 for failure to comply with Title 15, section 1024(e) of the California Code of Regulations.

5. **GRANTED** as it applies to Defendants Marc Schneider, Jeffrey Lopez, Eligio Lara, David Culver, and Duane Schneider's liability under California Government Code Section 845.6.

6. **GRANTED** as it applies to Defendants Marc Schneider, Andrew Brice, Jeffrey Lopez, Eligio Lara, David Culver, and Duane Schneider's liability for negligence under California law.

7. **DENIED** in all other respects.

IT IS SO ORDERED.