| | |
|---|---|
| **GIRARDI \| KEESE** | **MULLEN & HENZELL, L.L.P.** |
| DAVID R. LIRA, SBN 134370 | MACK S. STATON, SBN 089277 |
| dlira@girardikeese.com | mstaton@mullenlaw.com |
| SAMANTHA K. GOLD, SBN 314048 | JARED M. KATZ, SBN 173388 |
| sgold@girardikeese.com | jmk@mullenlaw.com |
| 1126 Wilshire Boulevard | 112 E. Victoria Street |
| Los Angeles, California 90017 | Santa Barbara, California 93101 |
| Telephone: (213) 977-0211 | Telephone: (805) 966-1501 |
| Facsimile: (213) 481-1554 | Facsimile: (805) 966-9204 |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SHANE HORTON, by his guardian ad litem, YVONNE HORTON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SANTA MARIA, et al.,<br><br>Defendants. | Case No. 2:14-cv-06135-SJO (PJWx)<br><br>**PLAINTIFF SHANE HORTON'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Trial Date:   February 25, 2020<br>Judge:        Hon. S. James Otero<br>Dept.:         Courtroom 10C<br><br>Complaint Filed: August 4, 2014 |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. SUMMARY OF RELEVANT FACTS AND PROCEDURE .......................... 1

    A. Factual Background .................................................................................. 1

    B. Procedural History ..................................................................................... 3

III. PLAINTIFF'S CLAIMS, ELEMENTS THEREOF, AND SUPPORTING EVIDENCE ............................................................................. 4

    A. Claim 1: Violation of Fourteenth Amendment By Pretrial Detainee Regarding His Conditions of Confinement/Medical Care .......................................................................................................... 4

    B. Claim 2: Section 1983 Claim Against City of Santa Maria and Santa Maria Police Department Based on a Policy of Failure to Train ........................................................................................................... 5

    C. Claim 3: Violation of California Government Code Section 845.6 ............................................................................................................ 6

IV. ANTICIPATED EVIDENTIARY ISSUES ....................................................... 7

V. DISPUTED ISSUE OF LAW .............................................................................. 8

VI. DEFENDANTS' REQUEST TO BIFURCATE SHOULD BE DENIED ....... 8

VII. JURY TRIAL AS A MATTER OF RIGHT ...................................................... 9

VIII. PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES ................................... 9

IX. ABANDONED CLAIMS ..................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Hirst v. Gertzen,* 676 F.2d 1252 (9th Cir.1982) .......................................................8, 9

*Horton by Horton v. City of Santa Maria*, 915 F.3d 592 (9th Cir. 2019) ...................4

*Lawman v. City & Cty. of San Francisco*, 159 F. Supp. 3d 1130 (N.D. Cal. 2016)..................................................................................................................7

**STATUTES**

42 U.S.C. § 1988(b)...................................................................................................9

Cal. Gov't Code § 845.6.............................................................................................7

Fed. R. Civ. Proc. 42(b).............................................................................................8

**OTHER AUTHORITIES**

Model Civ. Jury Instr. 9th Cir. 9.30 (2019)................................................................5

Model Civ. Jury Instr. 9th Cir. 9.8 (2019)..................................................................6

# MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## I.

## INTRODUCTION

Plaintiff Shane Horton ("Plaintiff"), then age 19, was suicidal when Officer Andrew Brice left him alone and unattended for 27 minutes in a temporary holding cell at the Santa Maria Police Department ("SMPD"). Although SMPD's written policies said that officers "should" remove the belts of all detainees, its actual custom and practice was *not* to remove their belts. SMPD also provided no training to officers on suicide prevention or identifying and evaluating mentally disordered offenders. After being left alone, Plaintiff attempted to hang himself in the cell using his own belt, resulting in permanent brain injury from a prolonged period of anoxia (lack of oxygen) before Officer Brice discovered him hanging from the cell door 27 minutes later. The entire incident was captured on time-sequenced SMPD surveillance video.

The gravamen of this civil rights action is the City of Santa Maria's and SMPD's (collectively, "Defendants") unconstitutional deprivation of Plaintiff's rights as a detainee to be safeguarded from injury and receive necessary medical care under federal and state law. As a result of the Defendants' unconstitutional conduct, Plaintiff is brain dead and requires lifelong, constant care. His economic and noneconomic damages exceed $50,000,000.

## II.

## SUMMARY OF RELEVANT FACTS AND PROCEDURE

**A.  Factual Background**

In 2012, Plaintiff had a history of mental health issues but lived a full life in Santa Maria, California. He loved music, surfing, and the Japanese language and culture. In December of 2012, he had a particularly difficult period where he self-harmed and threatened suicide.

On December 29, 2012, SMPD brought Plaintiff into custody on potential

misdemeanor vandalism charges. SMPD Officer Duane Schneider ("Schneider") confined Plaintiff to a small temporary holding cell in the Santa Maria Police Station ("Facility") and confiscated Plaintiff's iPod, wallet and loose change. Schneider did not remove Plaintiff's 3 belts despite SMPD's written policy that officers "should" remove detainees' belts.

     As reflected in the video recording, Plaintiff alerted Schneider to his mental health and drug issues. Plaintiff revealed he was anxious, wanted to talk to somebody, was "a little buzzed"[1] and "had a couple of beers." Schneider acknowledged he thought Plaintiff was intoxicated. Plaintiff also disclosed his past psychotropic drug use – "Molly" (ecstasy) laced with PCP, and marijuana. The Molly and PCP, Plaintiff described, made him start "freaking out." He was "stuck in a paradox in his own mind . . . and I broke my window and it was really bad. I put cigarettes out on my face." Schneider acknowledged to Plaintiff that PCP could "stay in your system" and cause "flashbacks." Plaintiff repeated his request "to talk to someone," and said that "no one listens to [him]." Schneider's response was for Plaintiff to relax because it "isn't the end of the world." Plaintiff continued to discuss his mental difficulties and ask for someone to talk to him. Schneider then inquired if Plaintiff had "any medical problems," and Plaintiff responded "not that I know of," but reiterated his extreme anxiety.

     As the conversation concluded, Schneider stated that he would likely do a "psych or something" and was waiting for Officer Brice. If Plaintiff needed anything, Schneider instructed Plaintiff to wave at the camera located inside the cell. Schneider left Plaintiff at approximately 8:28 a.m. and did not check on him again.

     At 9:46 a.m., Brice returned to the facility and transferred the Plaintiff to a separate interview room at the Facility. There, Brice explained that Plaintiff would

---

[1] All quotations are culled from the video and audio recording of the incident at the Facility.

be taken to jail where he could either post bail or spend the night.  Plaintiff was returned to his cell and called his mother, Yvonne Horton.  Mrs. Horton also requested to speak with Brice privately out of the presence of Plaintiff.

Brice agreed and spoke to Mrs. Horton[2], who informed Brice of Plaintiff's previous and recent suicide attempt and mental health challenges. She conveyed her belief that Plaintiff was an immediate danger to himself if left alone and unsupervised.

Despite Mrs. Horton's warnings, Brice elected to leave Plaintiff unattended and without medical assistance.  During this time, Plaintiff wrapped his belt around the jail cell bars and attempted to hang himself.  Plaintiff was in this position for 27 minutes, causing oxygen deprivation and ultimately, anoxic brain injury.  The incident was recorded on the jail cell camera, but no one at the Facility monitored the cell, either via video feed or in person.

Once Brice finally discovered Plaintiff unresponsive and hanging from his belt, Plaintiff was transferred to Marian Regional Medical Center for emergent medical intervention.  Diagnostic imaging showed diffuse cerebral medina producing sulcal effacement.  Mrs. Horton was prepared by medical staff that her son's outcome would most likely be a chronic vegetative state.  To date, 7 years later, Plaintiff remains in the subacute unit of St. John's Regional Medical Center in Camarillo, California.

**B.    Procedural History**

This civil rights action was filed on August 4, 2014 and contained 4 claims. On August 28, 2015, the Honorable S. James Otero granted in part and denied in part the Defendants' motion for summary judgment/adjudication.  The Defendants appealed Judge Otero's ruling.  On February 1, 2019, the United States Court of

---

[2] Defendants will dispute whether this phone call transpired, but Mrs. Horton's cell phone records prove that it occurred.

3
PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Appeal in the Ninth Circuit reversed in part and affirmed in part Judge Otero's order. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592 (9th Cir. 2019). The action was remanded to Judge Otero for jury trial on three (3) civil rights claims. *See id.*

## III.
## PLAINTIFF'S CLAIMS, ELEMENTS THEREOF, AND SUPPORTING EVIDENCE

There are three (3) civil rights claims at issue in this case. They are as follows:

**A.     Claim 1: Violation of Fourteenth Amendment By Pretrial Detainee Regarding His Conditions of Confinement/Medical Care**

The Plaintiff has brought a claim under the Fourteenth Amendment to the United States Constitution against all Defendants. The Plaintiff asserts the Defendants failed to provide safe conditions of confinement and needed psychiatric care. To prevail on this claim, the Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

Elements Required to Establish Plaintiff's Claim for Violation of the Fourteenth Amendment by a Pretrial Detainee Regarding Conditions of Confinement/Medical Care

1.   The Defendants made an intentional decision regarding the conditions under which the Plaintiff was confined and the denial of needed psychiatric care;

2.   The conditions of confinement and denial of needed psychiatric care put the Plaintiff at substantial risk of suffering serious harm;

3.   The Defendants did not take reasonable[3] available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the

---

[3] "With respect to the third element, the defendant's conduct must be objectively unreasonable." Model Civ. Jury Instr. 9th Cir. 9.30 (2019).

circumstances would have understood the high degree of risk involved—making the consequences of their conduct obvious; and

    4.    By not taking such measures the defendant officers caused the Plaintiff's injuries.

Model Civ. Jury Instr. 9th Cir. 9.30 (2019).

Key Evidence

The key evidence for this claim includes the video surveillance footage and transcript of Plaintiff in temporary holding cell; the call log for the Santa Maria Police Station on the date of the incident; the Santa Maria Police Department Policy Manual; Mobile Data Terminals Message History from December 29, 2012 to January 12, 2013; the recording of incoming calls to the Santa Maria Police Department on December 29, 2012; the Plaintiff's medical records from December 29, 2012 to the present, including but not limited to the Marin Regional Medical Center medical records; all of the Plaintiff's expert reports and experts' anticipated testimony; and the anticipated testimony of percipient witnesses Sgt. Duane Schneider, Ofc. Andrew Brice, Sgt. Marc Schneider, and Yvonne Horton.

**B.**    <u>**Claim 2**</u>**: Section 1983 Claim Against City of Santa Maria and Santa Maria Police Department Based on a Policy of Failure to Train**

The Plaintiff also has a section 1983 claim against the City of Santa Maria and Santa Maria Police Department based on a policy of a failure to train their police officers. To prevail, the Plaintiff must prove each of the following elements by a preponderance of the evidence:

<u>Elements Required to Establish Plaintiff's Section 1983 Claim for the Failure to Train Police Officers</u>

    1.    The conduct of the City of Santa Maria's and Santa Maria Police Department's police officers deprived the Plaintiff of his particular rights under the laws of the United States as explained in later instructions;

    2.    City of Santa Maria's and Santa Maria Police Department's police

officers acted under color of state law;

    3.    The training policies of the Defendants City of Santa Maria and Santa Maria Police Department were not adequate to prevent violations of law by its employees and/or train their police officers to handle the usual and recurring situations with which they must deal;

    4.    Defendants City of Santa Maria and Santa Maria Police Department were deliberately indifferent to the known or obvious consequences of its failure to train its police officers adequately; and

    5.    The failure of the Defendants City of Santa Maria and Santa Maria Police Department to provide adequate training caused the deprivation of the Plaintiff's rights by Officers Brice and Schneider; that is, the Defendant's failure to train is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

Model Civ. Jury Instr. 9th Cir. 9.8 (2019).

<u>Key Evidence</u>

The key evidence for this claim includes the video surveillance footage and transcript of Plaintiff in temporary holding cell; the call log for the Santa Maria Police Station on the date of the incident; the Santa Maria Police Department Policy Manual; Mobile Data Terminals Message History from December 29, 2012 to January 12, 2013; the recording of incoming calls to the Santa Maria Police Department on December 29, 2012; the Plaintiff's medical records from December 29, 2012 to the present, including but not limited to the Marin Regional Medical Center medical records; all of the Plaintiff's expert reports and experts' anticipated testimony; and the anticipated testimony of percipient witnesses Sgt. Duane Schneider, Ofc. Andrew Brice, Sgt. Marc Schneider, and Yvonne Horton.

**C.**    **<u>Claim 3: Violation of California Government Code Section 845.6</u>**

The Plaintiff also has a claim based on the Defendants' violation of California Government Code section 845.6, which states in pertinent part, that a public

6
PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

employee or entity is liable "if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6.

Elements Required to Prove Claim for Violation of Cal. Gov't. Code Section 845.6

To state a claim under section 845.6, a prisoner must establish three elements:

(1) the public employee knew or had reason to know of the need

(2) for immediate medical care, and

(3) failed to reasonably summon such care.

*Lawman v. City & Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1150 (N.D. Cal. 2016) (internal quotations and citation omitted).

Key Evidence

The key evidence for this claim includes the video surveillance footage and transcript of Plaintiff in temporary holding cell; the call log for the Santa Maria Police Station on the date of the incident; the Santa Maria Police Department Policy Manual; Mobile Data Terminals Message History from December 29, 2012 to January 12, 2013; the recording of incoming calls to the Santa Maria Police Department on December 29, 2012; the Plaintiff's medical records from December 29, 2012 to the present, including but not limited to the Marin Regional Medical Center medical records; all of the Plaintiff's expert reports and experts' anticipated testimony; and the anticipated testimony of percipient witnesses Sgt. Duane Schneider, Ofc. Andrew Brice, Sgt. Marc Schneider, and Yvonne Horton.

## IV.

## ANTICIPATED EVIDENTIARY ISSUES

After meeting and conferring in good faith, the parties came to an impasse about the Defendants' proposed edits to the transcript of the footage taken in the small temporary holding cell where the relevant events transpired [Exh. "1"]. Before litigation, the Defendants engaged a reporter to transcribe the contents of the footage into a written transcript. After this action was filed, the transcript was

included in initial disclosures. Its accuracy was not questioned at any point during the discovery phase, and the Plaintiff relied on it heavily to inform his discovery plan and trial strategy. On the eve of trial, the Defendants requested that Plaintiff stipulate to multiple edits of the transcript based upon new objections from Officer Schneider. Each of the proposed revisions are self-serving and uncorroborated by the other evidence. In addition, the Plaintiff's case would be unduly prejudiced by the material changes at this late date. Plaintiff respectfully requests that the Defendants be precluded from editing the transcript that they previously prepared.

## V.
## DISPUTED ISSUE OF LAW

There is one critical disputed issue of law concerning the application of Title 15 of the California Code of Regulations ("CCR"). Title 15 is the portion of the CCR that deals with crime prevention and corrections. The Defendants suggested that the regulations within Title 15 do not apply because they solely apply to temporary holding facilities. However, this reading is inapposite to several sections of Title 15. For instance, the regulations pertain to what is referred to as a Type III holding facility, which is not considered a temporary holding facility. *See* 15 CCR 1006. Accordingly, Title 15 has full force in this action.

## VI.
## DEFENDANTS' REQUEST TO BIFURCATE SHOULD BE DENIED

The Defendants will move to bifurcate the liability and damages phases of trial. Federal Rule of Civil Procedure 42(b) permits the court to "order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims." Separate trials are granted to promote "convenience, to avoid prejudice, or to expedite and economize" the proceedings. *Id.* The decision to bifurcate is in the court's discretion. *Hirst v. Gertzen,* 676 F.2d 1252, 1261 (9th Cir.1982). It is particularly appropriate where it simplifies issues for the jury and avoids unnecessary jury confusion. *Id.* For instance, where the resolution of issue

8
PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

might dispose of the entire case. *Id.* However, bifurcation is not appropriate where, as here, the issues of liability and damages are interwoven. The Plaintiff's pre-existing medical conditions and history of mental illness are critical in determining both liability and damages issues. The presentation of footage of the incident is also relevant for both liability and damages. As such, bifurcation would create the need for duplicative presentation of evidence rather than the reduction of evidence.

## VII.
## JURY TRIAL AS A MATTER OF RIGHT

The Plaintiff is entitled to a jury trial on all three (3) of his claims. Plaintiff and Defendants both demanded a jury trial, and all appropriate fees have been paid. This is not anticipated to be in dispute by any party.

## VIII.
## PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES

It is well-established that the prevailing party in a civil rights case may collect reasonable attorneys' fees as damages. 42 U.S.C. § 1988(b) ("the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs"). Since the gravamen of Plaintiff's case is for unconstitutional violations of the Fourteenth Amendment, Plaintiff is eligible to receive attorneys' fees upon prevailing. At the conclusion of the trial, the Plaintiff will request attorneys' fees in an amount to be proven after trial.

## IX.
## ABANDONED CLAIMS

The Plaintiff's fourth claim for negligence was dismissed on summary judgment. The Plaintiff elected not to cross-appeal on that claim.

DATED: January 17, 2020          GIRARDI | KEESE

By: __/s/ David R. Lira__
    DAVID R. LIRA
    Attorneys for Plaintiff