1  Bruce D. Praet, SBN 119430
   FERGUSON, PRAET & SHERMAN
2  A Professional Corporation
   1631 East 18th Street
3  Santa Ana, California 92705
   (714) 953-5300 Telephone
4  (714) 953-1143 Facsimile
   Bpraet@aol.com
5
   Wendy L. Wilcox SBN 193644
6  Heather Mills SBN 190950
   SKANE WILCOX LLP
7  1055 W. 7th St., Ste. 1700
   Los Angeles, CA 90017
8  (213) 452-1200 telephone
   (213) 452-1201 facsimile
9  wwilcox@skanewilcox.com
   hmills@skanewilcox.com
10
   Attorneys for Defendants
11

12                    UNITED STATES DISTRICT COURT

13                  CENTRAL  DISTRICT OF CALIFORNIA

14  SHANE HORTON, by his guardian ad      )  No.  2:14-CV-06135 SJO  PJWx
    litem, YVONNE HORTON,                 )
15                                        )  **DEFENDANTS' MEMORANDUM
                                          )  OF CONTENTIONS OF LAW
16                Plaintiff,              )  AND FACT**
                                          )
17      vs.                               )  **PTC:    February 10, 2020**
                                          )  **TIME:  9:00 a.m.**
18  CITY OF SANTA MARIA; SANTA            )  **CTRM: 10-C**
    MARIA POLICE DEPARTMENT;              )
19  MARC SCHNEIDER; ANDREW                )  **TRIAL: February 25, 2020**
    BRICE; JEFFREY LOPEZ; ELIGIO          )  **TIME:   9:00 a.m.**
20  LARA; DAVID CULVER; and DOES 1-       )  **CTRM: 10-C**
    10, INCLUSIVE,,                       )
21                                        )
                                          )
22                Defendants.             )
    _____

23      Pursuant to the Court's Order and Local Rule 16.-4, Defendants Andrew

24  Brice and the City of Santa Maria, submit their Memorandum of Contentions of

25  Law and Fact:

26      **1.    PREFATORY STATEMENT.**

27      This case stems from the tragic attempt of Plaintiff, Shane Horton, to hang

28  himself while in the temporary custody of the Santa Maria Police Department on

                                    1

December 29, 2012.  Throughout the history of the case, this Court and the Ninth Circuit have substantially narrowed the remaining claims down to essentially three questions:

- •   Whether Officer Brice was somehow negligent in failing to summon medical care (*Calif. Govt. Code § 845.6*).
- •   Whether the City of Santa Maria was "deliberately indifferent" in its training its officers on suicidal issues.
- •   Whether the City of Santa Maria failed to adopt a policy addressing inmates with mental disorders pursuant to *Calif. Code of Regs., Title 15, section 1052*. [However, as set forth below, it would appear that this claim cannot survive on this basis in light of the Court's previous ruling that the City is exempt from Title 15 as a pre-1978 facility. Dkt. 46, p. 14].

As also discussed more fully below, this case is ideally situated for bifurcation of liability issues from any potential damage claims since liability issues are very straightforward and would not likely require more than a week of trial.  In the unlikely event of liability, on the other hand, Plaintiff has undergone over seven years of costly care and is expected to have an uncertain life expectancy involving full-time care as he remains in a vegetative state.  Given the number of experts and complex, controverted evidence on these post-incident (non-liability) issues, it is anticipated that a trial on damage issues alone would be highly prejudicial and entail at least an additional week of trial, if not more.

**Local Rule 16-4.1 CLAIMS AND DEFENSES.**

As noted above, Defendants assert that the remaining claims have been substantially narrowed to:

- •    Plaintiff's First Claim: Whether Officer Brice was somehow negligent in failing to summon medical care (*Calif. Govt. Code § 845.6*).

///

DEFENSES

1.  Although this Court denied summary judgment on this issue solely as to Officer Brice (i.e. this is no longer a claim against Officer Schneider or any other officer) [Dkt. 46, p. 16] based on a material issue of fact, Defendants contend that Plaintiff will be unable to meet his burden of establishing (1) Brice knew or had reason to know he was in need of (2) "*immediate*" medical care, and (3) failed to take reasonable steps to *summon* such medical care.  *Castaneda v. Dept. of Corr., 212 Cal.App. 4th 1051, 1070 (2013)*.

2.  Although couched in terms of a failure to *summon* medical aid, there is no contention that Officer Brice failed to timely summon medical care once he discovered that Plaintiff had attempted to hang himself.  Instead, this claim is more accurately framed as an alleged failure to recognize (diagnose) Plaintiff's purported need for medical care (i.e. whether Brice knew or should have known Plaintiff was suicidal). In that regard, Defendants are entitled to the immunity provided by *Calif. Govt. Code § 855.8* - immunity for failing to diagnose that a person is afflicted with mental illness.

3.  Defendants contend that Officer Brice acted reasonably under the circumstances and that his negligence, if any, was not a substantial cause of Plaintiff electing to hang himself.  *Calif. CACI Jury Instruction 400 (2019)*.

Evidence Supporting These Defenses: The video recorded interaction between Plaintiff and officers prior to his attempted suicide makes it clear that there was no indication that Plaintiff harbored any suicidal ideation.  While Plaintiff's mother, Yvonne Horton, asserts that she alerted Officer Brice to some immediate risk of suicide, the contemporaneous and historical evidence strongly contradicts such a claim.

4.  Defendants contend that Plaintiff was comparatively, if not exclusively, negligent in causing his own self-inflicted injury. *Calif. CACI Jury  Instruction 405 (2019)*.

*///*

1    <u>Evidence Supporting This Defense:</u> The video recorded interaction between

2    Plaintiff and his mother establishes that the decision to attempt suicide was

3    exclusively that of Plaintiff only after his mother declined to post bail.

4        •    <u>Plaintiff's Second Claim:</u> Whether the City of Santa Maria was

5             "deliberately indifferent" in its training its officers on suicidal issues.

6    <u>DEFENSES</u>

7        1.  As this Court has already held, this claim requires that Plaintiff prove

8    that the City's need to train their employees as to proper suicide detection and

9    prevention methods was "so obvious" as to constitute "deliberate indifference"

10   under the 14th Amendment. [Dkt. 46, p. 14] Initially, Defendants contend that

11   Plaintiff cannot meet his heightened burden of proof on this claim.

12       2.  Defendants contend that Plaintiff cannot establish that the City of Santa

13   Maria was (1) objectively aware of the need to train on these issues, but (2) made

14   an intentional decision not to train its officers, (3) such deliberate indifference in

15   lack of training placed Plaintiff at a substantial risk of serious harm, (4) the City

16   did not take reasonable steps to remedy an obvious issue, and (5) that any failure

17   to train was such a "moving force causing Plaintiff's injury". *Castro v. Los*

18   *Angeles, 833 F3d 1060, 1071 (9th Cir. 2016);  City of Canton v. Harris, 489 U.S.*

19   *378, 391 (1989).  Model Ninth Cir. Instruction 9.8.*

20       3.  Defendants assert that a finding of "negligent training" is insufficient to

21   establish this claim.  *Dougherty v. Covina, 654 F3d 892, 900 (9th Cir. 2011).*

22   <u>Evidence Supporting These Defenses:</u> The testimony of all officers will

23   establish that the City provided and ensured that all officers received more than

24   adequate training on suicide issues and were intimately familiar with all related

25   policies. Expert testimony will reinforce this defense.

26       4.  In light of the Ninth Circuit's grant of qualified immunity to Officer

27   Brice [*Horton v. Santa Maria, 915 F3d 592, 602 (9th Cir. 2019)*], this claim is

28   strictly limited to a claim of municipal liability against the City of Santa Maria.

     ///

• <u>Plaintiff's Third Claim:</u> Whether the City of Santa Maria failed to adopt a policy addressing inmates with mental disorders pursuant to *Calif. Code of Regs., Title 15, section 1052.* [Dkt. 46, p.14-15]

<u>DEFENSES</u>

1.   Whether Plaintiff may maintain a straightforward claim of "deliberate indifference" with respect to the City's policy, Defendants note that this Court has already expressly held that the City of Santa Maria is exempt from the requirements of *Calif. Code of Regs., Title 15* as a pre-1978 facility. *Calif. Code of Regs., Title 15, section 1006* [Dkt. 46, p.14.]  As such, any claim of "deliberate indifference" with respect to policy, if at all, may not be based upon or reference in any way the requirements for such policies under *Calif. Code of Regs., Title 15, section 1052.* [See: also Defendants' *Limine* Motion]

2.   If such a policy claim remains in any limited form, Defendants contend that the City's existing policies were adequate and lawful under the circumstances and not in violation of Plaintiff's constitutional rights. [Note: also see Defendants' *Limine* Motion with respect to subsequent policies and policy issues not relevant to this issue.]

3.   Defendants further contend that even in the unlikely event of a "deliberately indifferent" policy on this narrow issue, such policy was not such a "moving force causing Plaintiff's injury". *Gravelet-Blondin v. Shelton, 728 F3d 1086, 1096 (9th Cir. 2013); Model Ninth Circuit Instruction 9.5.*

<u>Evidence Supporting These Defenses:</u> Noting that the City of Santa Maria was not governed by Title 15 policy requirements, testimony of the involved officers and experts will establish that the City's policies were more than adequate to address these issues and consistent with similarly situated facilities throughout the state of California.

///

///

**Local Rule 16-4.3 - BIFURCATION.**

**A.    Prefatory Statement.**

Tragically, Shane Horton's attempt to commit suicide by hanging himself in the Santa Maria Police Facility has left him in a permanent vegetative state for the remainder of his rather uncertain life expectancy.  Yet, his undeniably sympathetic and complex medical condition is precisely why any potential damage issues must be bifurcated from the otherwise straightforward and potentially dispositive issues of liability.  As noted above, this Court and the Ninth Circuit have substantially narrowed liability down to no more than three rather simple questions, none of which even remotely overlap any issues related to potential damages.

Obviously, all of these questions can and will be answered according to the information available and existing up to the time Shane Horton attempted suicide on December 29, 2012.  It is anticipated that evidence on these relatively straightforward issues could be completed in 3-4 days with perhaps less than ten witnesses (including liability experts). As noted, Plaintiff Shane Horton is non-communicative and cannot testify except for recordings of his conversations at Santa Maria PD prior to his suicide attempt. Upon completion of such evidence, a jury will be fully equipped to decide all questions of liability.

If, as Defendants obviously hope, a jury finds in favor of Defendants, the trial will be over within a week (absent prolonged deliberations). If, however, a jury finds for the Plaintiff, the amount of evidence to be presented on damages will be extensive and involve many experts on both sides, including technical and complex medical testimony, life care, life expectancy and economists dealing with calculations ranging into the millions of dollars.  Although the cause of Shane's condition is undisputed (self-inflicted hanging), his medical treatment and treatment over more than seven subsequent years and continuing indefinitely will entail extensive and undoubtedly conflicting opinions, none of which have anything to do with questions of liability. Between the parties, there are currently no less than eight "damage" experts, plus no less than three designated non-

retained experts who have been post-incident treating physicians.  It is anticipated that the expert testimony alone will require no less than an additional week of trial time notwithstanding the substantial cost incurred by all parties and the inherent difficulty of coordinating appearances by highly paid and busy experts.

Moreover, although Shane Horton is the only named Plaintiff, his vegetative state will likely require that his mother, Yvonne Horton as Guardian ad Litem, attempt to provide testimony regarding Shane's life over the past seven years since this incident.  While this is again completely irrelevant to any issues of liability, it is predictable that Ms. Horton will understandably present highly emotional testimony regarding the post-incident life she and Shane have experienced with a substantial risk of appealing to the emotions of the jury.  Whether the non-communicative Shane Horton is present at trial or not, the undeniably tragic consequences of his self-inflicted actions carry a substantial risk of a jury verdict improperly based on sympathy and passion rather than the facts.

Although it is anticipated that Plaintiff would prefer to focus the jury on Shane's current condition and the enormous financial issues, this case is ideally situated, if not mandated, to bifurcate liability from damages for multiple reasons:

- Evidence relevant to liability questions is straightforward and will not even remotely overlap any issues relevant to potential damages.
- The potential prejudice to Defendants inherent in burdening the jury with the undeniably tragic and sympathetic consequences of Shane's attempted suicide is inescapable.
- Given estimates which could involve millions of dollars in future care, Defendants face the additional prejudice of a jury improperly balancing the presumed wealth of a public entity against the nominal wealth of Plaintiff so as to render a verdict based on wealth rather than the factual evidence.
- A trial limited to liability issues will maximize and expedite judicial economy and efficiency by consuming perhaps a week of trial.  If a

defense verdict is rendered, there would be no need for a lengthy and costly second week of trial with multiple experts further subject to the difficulty of logistically scheduling busy experts.

• Evidence relevant to damage issues will be complex, highly technical and often confusing with multiple competing experts.

• Since all liability issues are separate and distinct from any potential damage issues, jury instructions and a verdict form in a liability phase will be completely independent of any damage instructions.

For these reasons and more set forth below, Defendants respectfully urge the Court to bifurcate the liability phase of trial from any damages phase which may or may not be necessary.

**B.** **Bifurcation of Liability from Damages is Warranted, if not Mandated.**

*F.R.Civ.P., Rule 42(b)* provides for the bifurcation of issues at trial for three reasons (1) convenience, (2) to avoid prejudice, and (3) to expedite or economize. The decision whether to bifurcate is left to the sound discretion of the trial court after consideration of such factors as "potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result." *Fahmy v. Jay Z., 2015 U.S. Dist. LEXIS 129446, *72 (C.D. Cal. 2015)* [Quoting *Cravens v. Cty of Wood, 856 F2d 753. 755 (6th Cir. 1988).* Here, virtually all factors weigh heavily in favor of bifurcating liability from any potential damage phase of trial.

Perhaps even more so than in *Fahmy (supra., p.75-76)* in which liability and damage phases were bifurcated, the two (or three) liability questions posed to this jury (i.e. mostly straightforward facts and evidence preceding Shane's attempted suicide) will be completely separate and distinct from any potential issues of damages (voluminous evidence and protracted, confusing and conflicting expert testimony) with virtually no overlap. As the Court noted in *Pom Wonderful LLC v. Welch Foods, 2010 U.S. Dist. LEXIS 126323, *4 (C.D. Cal. 2010), "*it should be

easy" to determine liability without reaching evidence of damages. Here, Defendants agree that admissible evidence preceding this incident may be relevant to issues of liability, but there is simply no valid reason to introduce any, much less extensive, evidence of post-incident circumstances unless or until the jury is tasked with the determination of damages.

Here, virtually any potential risk of jury confusion will be eliminated with bifurcation since jury instructions pertaining to liability issues are separate and distinct from any potential damage instructions.

Also present is the same issue of conserving valuable judicial resources recognized in *Fahmy.* As noted above, it is anticipated that evidence relevant to the determination of liability issues can easily be presented in less than a week of trial. If the jury renders a defense verdict, judicial economy would be promoted by bifurcation by eliminating the need to even consider evidence of damages. *Bates v. UPS, 204 F.R.D. 440, 449 (N.D. Cal. 2001).* Evidence on the separate and distinct issue of damages, on the other hand, will entail the presentation of more than seven years of costly and complex full time in-patient care in addition to confusing and highly contested expert testimony attempting to predict Shane's life expectancy, future life care, medical prognosis, appropriateness of medical expenses for seven years and other issues exclusively dependent on competing experts. Such evidence will likely consume at least another full week of valuable trial time. Where the litigation of one issue may eliminate the need to litigate a second issue, bifurcation is appropriate. *Amato v. City of Saratoga Springs, 170 F3d 311, 316 (2nd Cir. 1999).*

As also noted above, it is anticipated that Shane's mother and Guardian ad Litem, Yvonne Horton, will be proffering testimony addressing all of the issues and complications Shane has experienced for the past seven years as a result of his attempted suicide. While this may (or may not) be admissible during any damage phase, it will have absolutely no relevance to liability issues. It will also undoubtedly entail highly emotional testimony from a guilt ridden mother which

will inescapably draw on the passion and sympathy of jurors.  Whether the non-communicative Shane is physically present at any point during trial, the undeniably tragic outcome of his self-inflicted suicide attempt would prejudicially divert the jury's objectivity necessary to render a verdict on liability.  *FRE, Rule 403; Norwood v. Children and Youth Svcs., 2011 U.S. Dist. LEXIS 159820 (C.D. Cal. 2012).*

Although the risk of a jury improperly considering the (presumed) wealth of a public entity might be present in most police cases, Plaintiff will undoubtedly be presenting expert testimony estimating millions of dollars in past and future damages.  While Defendants are precluded from introducing evidence that most, if not all of these damages have been and will be covered by insurance or government programs such as Medicaid, it will be virtually undisputed that Shane Horton has no means by which to pay such high costs.  As such, the highly prejudicial effect of allowing the jury to consider evidence of damages during any liability phase cannot be minimized or overlooked.  *Norwood, supra.*

With the exception of Plaintiff's desire to improperly appeal to the passion and sympathy of the jury, virtually all factors present in this case warrant bifurcation of liability from damages.  As such, it is respectfully requested that the Court limit the evidence in phase one of trial to admissible evidence strictly related to liability issues.  If the jury renders a defense verdict, neither the Court nor the parties will be required to endure the emotional and financial cost of introducing protracted and complex expert testimony on damages.  If, on the other hand, the jury renders a verdict in favor of Plaintiff on the issue of liability, the jury could then seamlessly transition into a damage phase for consideration of separate and distinct evidence.

### Local Rule 16-4.4 - JURY TRIAL

All parties have made a timely demand for a jury trial as to all issues.

///

///

1

**<u>Local Rule 16-4.6 - ABANDONED ISSUES.</u>**

2

As noted above, this Court and the Ninth Circuit have substantially

3

narrowed the issues so that a trial on liability should be relatively straightforward

4

and efficient.

5

Dated: January 17, 2020                           FERGUSON, PRAET & SHERMAN
                                                  A Professional Corporation

6

7

                                        By:    /s/   Bruce D. Praet
                                               Bruce D. Praet, Attorneys for
8                                              Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11