Bruce D. Praet, SBN 119430
FERGUSON, PRAET & SHERMAN
A Professional Corporation
1631 East 18th Street
Santa Ana, California 92705
(714) 953-5300 Telephone
(714) 953-1143 Facsimile
Bpraet@aol.com

Wendy L. Wilcox SBN 193644
Heather Mills SBN 190950
SKANE WILCOX LLP
1055 W. 7th St., Ste. 1700
Los Angeles, CA 90017
(213) 452-1200 telephone
(213) 452-1201 facsimile
wwilcox@skanewilcox.com
hmills@skanewilcox.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE HORTON, by his guardian ad litem, YVONNE HORTON, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF SANTA MARIA; SANTA MARIA POLICE DEPARTMENT; MARC SCHNEIDER; ANDREW BRICE; JEFFREY LOPEZ; ELIGIO LARA; DAVID CULVER; and DOES 1-10, INCLUSIVE,, <br><br> Defendants. | No. 2:14-CV-06135 JLS PJWx <br><br> **DEFENDANTS' NOTICE OF MOTION AND LIMINE MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT, ROGER CLARK** <br><br> **Motion in Limine No. 3** <br><br> **DATE: June 12, 2020** <br> **TIME: 10:30 a.m.** <br> **CTRM: 10-A** |

**TO: PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 12, 2020, at 10:30 a.m., or as soon thereafter as counsel may be heard, Defendants will and hereby do move this Court *in limine* for an order that all parties, the attorneys for all parties, and all witnesses who may be called in this trial be instructed on the following matters:

1

1. That Plaintiffs' police practices expert, Roger Clark, cannot introduce or present any testimony concerning, questioning upon, reference to, or any other form of evidence regarding standards, requirements or training established by Title 15, Cal. Code Regs., Title 24, Cal. Code Regs. or any other standard not applicable to SMPD.

2. That Plaintiffs' police practices expert, Roger Clark, cannot introduce or present any testimony concerning, questioning upon, reference to, or any other form reference the opinion of the Ninth Circuit in this case.

3. That Plaintiffs' police practices expert, Roger Clark, cannot introduce or present any testimony concerning, questioning upon or reference any personal opinions for which he is unqualified including, but not limited to whether he believes Shane Horton was depressed, suicidal or any opinions with respect to credibility of witnesses or ultimate determinations solely within the role of the jury.

Any comment or the attempted introduction of the above evidence will be improper and highly prejudicial to Defendants. Even if the Court sustained an objection to the evidence at trial and instructed the jury to disregard it, the evidence would be so prejudicial that Defendants could not receive a fair trial.

Accordingly, Defendants ask this Court for an order admonishing Plaintiff, their counsel and witnesses not to attempt to introduce such evidence, in any form, and not to suggest, comment directly or indirectly on, or refer to the evidence in any way, before the jury without first obtaining the Court's permission.

The Court is further requested to direct Plaintiffs' counsel to caution, warn and instruct Plaintiff's witnesses not to make any reference to such evidence and to follow the same order.

1  This motion is based on this Notice of Motion and Motion, the
2  accompanying Memorandum of Points and Authorities, all exhibits, all the
3  pleadings and papers on file herein, any evidence of which the Court takes judicial
4  notice of prior to or at the hearing of this matter, and on any oral or documentary
5  evidence that may be presented at the hearing of this motion.

DATED: May 15, 2020         FERGUSON, PRAET & SHERMAN
                            A Professional Corporation


                      By:    /s/ Bruce D. Praet
                            Bruce D. Praet,
                            Attorneys for Defendants

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. PREFATORY STATEMENT.

In ruling on Defendants' summary judgment motion, the Court appropriately and expressly recognized that the City of Santa Maria is exempt from the provisions of 15 Ca. Code Regs. since its facility was constructed over a decade prior to January 1, 1978. [See: Dkt. 46, p. 14; Title 15, § 1006] As such, the Court went on to rule that no claim could be based on any allegation that the City somehow failed to meet the requirements of Title 15, § 1024, setting forth training requirements for a Temporary Holding Facility. [*Ibid.*] (See: Defendants' *Limine* Mo. 2)

Until the very recent deposition of Plaintiff's police practices expert, Roger Clark, on March 30, 2020, it had never been alleged that the Santa Maria Police Department might somehow have been out of compliance with 24 Ca. Code Regs pertaining to construction of the involved facility. Yet, Mr. Clark is now claiming that this alleged lack of compliance somehow gave rise to Shane Horton's ability to attempt suicide. However, Mr. Clark's reference to Title 24 must be excluded for a number of reasons:

- First and foremost, CCR, Title 24 § 1231.1 expressly provides that its requirements do not apply to facilities constructed prior to January 1, 1978. Just as the Court has already held with respect to Title 15, the involved SMPD facility was constructed in 1963 and Title 24 requirements equally cannot be applied in this case.
- Similarly, even current provisions of Title 24 (e.g. requiring a toilet, wash basin, suicide proofing) do not apply to the cell involved in the instant case which is defined as a "Lockup" - a locked room or enclosure primarily used for temporary confinement of adults who have been recently arrested. [CCR, Title 24, § 13-102(a)]
- Not only was a violation of Title 24 (facility deficiencies) never alleged in this case since the outset, but the Court has substantially

1

        narrowed the remaining claims to be presented to the jury as including only two *Monell* claims against the City (i.e. alleged "deliberate indifference" in training and alleged "deliberate indifference" in failing to adopt a policy adequately addressing inmates with mental disorders under Title 15 [still subject to *limine* exclusion of all Title 15 reference] and a single claim that Officer Brice violated *California Govt. Code § 845.6* by failing to provide immediate medical care.]

    Allowing Mr. Clark to reference provisions of Title 24 (or Title 15 for that matter) which do not apply to this case as a matter of law would be a complete misrepresentation of the law, highly prejudicial to Defendants and confusing to the jury charged with deciding this case based on applicable law rather than the improper rambling of Plaintiff's paid expert.

    At his recent deposition, Mr. Clark also continuously recited portions of the Ninth Circuit opinion in this case [*915 F3d 593 (9thCir. 2018)*] as "factual evidence". Given that the Ninth Circuit was reviewing the district court's partial grant/denial of summary judgment, it was obviously obligated to view the facts most favorably to Plaintiffs. *Matsushita Elec. Indus. V. Zenith Radio, 475 U.S. 574, 587 (1986).* However, it would be misleading and completely inappropriate for Mr. Clark to suggest that any portion of the Ninth Circuit's opinion established "fact", much less had the endorsement of an appellate court.

    As more fully set forth below, Roger Clark is notorious for offering opinions on virtually any subject regardless of his complete lack of qualifications to do so. In this case, he has made it clear that he will attempt to opine on everything from credibility of witnesses to the psychological profile of Shane Horton and even questions exclusively reserved to the jury such as "deliberate indifference" and "callous disregard".

    While Defendants submit that Roger Clark is not qualified as an expert on any issue in this case, his testimony if at all, must be substantially restricted.

## 2. IT WOULD BE UNDULY PREJUDICIAL TO ALLOW REFERENCE TO NON-APPLICABLE STANDARDS.

As noted above and in Defendants' *limine* motion #2, the Court has already held that the provisions and standards of Title 15 were inapplicable to the SMPD holding facility where this incident occurred since it was expressly exempted as a pre-1978 facility. For the same reason, the construction standards set forth in Title 24 cannot be applicable to this pre-1978 facility. Thus, on its face, no aspect of Title 15 or Title 24 is relevant to any remaining narrow claims to be decided by the jury and must be deemed inadmissible. *FRE, Rule 402*.

If in fact Plaintiff was permitted to present or even reference such irrelevant and inapplicable Title 15 or Title 24 standards to the jury in any form, the jury would be improperly misled into believing that Defendants at least should have met standards not applicable to them. *FRE, Rule 403*. It would further cause undue confusion to provide the jury with policy and training standards not applicable to these Defendants, only then to ask the jury to determine whether Defendants were "deliberately indifferent" on issues of policy and training.

If Plaintiff was in any way permitted to even indirectly compare Defendants to Title 15, Title 24 or other inapplicable standards, the net effect would be to introduce such inapplicable standards and then immediately instruct them that such standards are not applicable to these Defendants. Such evidence would not only constitute a complete waste of valuable trial time, but then require that Defendants or the Court to somehow insure that the jury didn't nonetheless consciously or subconsciously consider such inapplicable standards. Permitting Plaintiffs to apply subsequent statutory standards retroactively would be akin to allowing a plaintiff driving a 1985 vehicle to impose 2020 government standards to the manufacturer. Obviously, the safest way to avoid these highly prejudicial issues is to simply preclude Plaintiff from in any way introducing or referencing Title 15, Title 24 or any other inapplicable standards.

///

### 3. PLAINTIFFS CANNOT BE PERMITTED TO REFERENCE THE NINTH CIRCUIT OPINION IN THIS CASE.

As noted above and, as set forth in the Ninth Circuit's opinion in this case, the appellate court's review of the district court's summary judgment ruling in this case necessarily viewed all facts most favorably to Plaintiffs. Yet, Plaintiffs' expert, Roger Clark, consistently relied on the narrative contained in the appellate ruling as findings of actual fact instead of properly relying on the actual evidence he had been provided for review. Without highlighting each and every such representation, Mr. Clark testified:

*Q: Okay. And I know you keep citing to the 9th Circuit opinion, but you're not taking that as factual evidence, are you?*

*A: Oh, absolutely. I took it as factual evidence because that's what they did. That's an expression of their factual evidence.* [Clark depo, RT:61:12-17 attached as exhibit "1"]

Not only is Mr. Clark clearly mistaken, but it would be misleading and highly prejudicial for Plaintiffs to even cite to, much less represent as "factual", any aspect of the Ninth Circuit's opinion in this case. Such reference would virtually eliminate the role of the jury to exercise its exclusive role of determining facts and improperly cast facts most favorably to Plaintiff with the apparent endorsement of the appellate court. *F.R.E., Rule 403*.

As such, it is respectfully requested that Plaintiffs, all witnesses, counsel and particularly Roger Clark be expressly prohibited from in any way referencing any aspect of the Ninth Circuit opinion in this case.

### 4. PLAINTIFFS' EXPERT, ROGER CLARK, MUST BE EXCLUDED OR EXTREMELY LIMITED IN THE SCOPE OF HIS OPINIONS.

Taking in no less than $350,000 each year testifying exclusively on behalf of attorneys suing law enforcement (on top of his $85,000/year retirement), Roger Clark openly admits that he opines 100% of the time that the police were wrong in

every one of the average 100 cases he handles each year. [Clark depo., RT:10:9-11:24]. Of course, the problem is that Mr. Clark also admits that he will gladly testify to whatever the court permits.[1] [Clark depo., RT:85:19-23] It is for this reason that the Court's role as a "gatekeeper" becomes so critical in assuring that the proffered expert testimony both rests on reliable foundation and is relevant to the issues at hand. *Primiano v. Cook, 598 F3d 558, 564 (9th Cir. 2010)*.

When offering a potential expert witness, the burden rests with the offering party to show that the expert's testimony meets the conditions of FRE, Rule 702. *Cooper v. Brown, 510 F3d 870, 942 (9th Cir. 2007)*. Rule 702 permits expert testimony only if:

(a) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training or education,

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(c) the testimony is based on sufficient facts or data;

(d) the testimony is the product of reliable principles and methods; and,

(e) the expert has reliably applied the principles and methods to the facts of the case.

With respect to the reliability of an expert's opinions, the Supreme Court has instructed that several factors should be analyzed: (1) whether a theory or technique can be tested, (2) whether it has been subjected to peer review and published, (3) the known or potential error rate of the theory or technique, and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Daubert v. Merrell Dow, 509 U.S. 579, 592-94 (1993)* The reliability of an expert's opinion is necessary to avoid unsubstantiated speculation and subjective beliefs [*Cooper, 510 F3d at 942*] or the impermissible introduction

---

[1] The Court must also remain vigilant to Mr. Clark's propensity to disregard the Court's Orders as he has no less than twice been found to have violated such orders. [See: Orders attached as exhibit "2"]

of unreliable conjecture. *Estate of Barabin v. Asten Johnson, 740 F3d 457, 463 (9th Cir. 2014).*

While Mr. Clark has managed to pass himself off as an expert in virtually any broad aspect of law enforcement he is paid to opine upon, his qualifications to opine on the unique issues in this case must be put into the proper perspective. As the Court in *Berry v. Detroit, 25 F3d 1342,1352(6th Cir 1994)* noted, permitting a fraud investigator to opine on use of force issues would be akin to permitting a divorce lawyer to opine on patent law. In fact, "it would be a mistake for a trial judge to declare anyone to be generically an expert." Id. In *Lippe v Howard, 287 F.Supp.3d 1271, 1280 (W.D. Ok. 2018)*, the Court excluded an alcoholic beverage investigator from testifying on use of force issues since the purported expert had never testified as a use of force expert and had written no peer reviewed literature relating to use of force. Here, Mr. Clark is totally unqualified to render virtually all of the opinions he has been paid to offer:

- Clark opines that Shane Horton expressed feelings of anxiety and depression to the Defendant officers [Clark depo, RT:29:2-10] and should have been recognized as a "deeply troubled" inmate that (sic) demonstrated suicidal ideation. [RT:51:14-52:12 and RT:53:2-21]. Yet, Mr. Clark's total education consists of an AA degree and his formal training on mental health issues with inmates consists of some mention of the subject during his 1965 LASD academy and partnering with a jailer at LA Men's Central jail for a brief orientation in the mid-1960's. [RT:18:2-23] While Plaintiffs have separately designated a licensed Psychologist [Dr. Patterson] and a former LASD supervisor in the final phase of his PhD program [Mr. Schuerger] to opine on purported indicators of alleged mental issues with Shane Horton, Roger Clark simply cannot be permitted to bootstrap himself into this role.

6

- Clark further goes on to call into question the credibility of Officer Brice by claiming that the officer's report should be "distrusted" based on Clark's own (mis)interpretation of the report. [RT:59:1-10]. While Clark goes on to claim that he leaves credibility determinations to the jury, he cannot be permitted to suggest that Officer Brice should be "distrusted" as this would encroach on the jury's vital and exclusive functions to make credibility determinations. *United States v. Hill, 749 F3d 1250, 1260 (10th Cir. 2014).*

- Once again asserting that he will testify as far as the court will allow, Mr. Clark has offered testimony that he believes that the actions of the involved officers rose to the level of "deliberate indifference". [RT:69:18-70:6] Similarly, Clark states that he will gladly opine that the officers acted with "callous disregard" if permitted. [RT:85:19-23] Notwithstanding the fact that Mr. Clark has no formal legal training, his willingness to usurp the exclusive role of the Court to instruct on the law cannot be permitted. While FRE, Rule 704 may permit an expert to offer an opinion which embraces the ultimate issue in a case, the Court in *Berry* pointed out that there is a subtle, but very important, distinction to be drawn. For example, while a fingerprint expert may be permitted to opine on whether a criminal defendant's prints matched evidence at the scene, he would not be permitted to testify that the defendant was guilty. *25 F3d at 1353-1354.* Likewise, Mr.Clark cannot be permitted to render opinions as to whether the officerss acted with "deliberate indifference", "callous disregard" or any other ultimate legal conclusion.

- Mr. Clark is also fond of citing Learning Domains [LD's] from the California Commission on Peace Officer Standards and Training [POST] as authority for his opinions. Yet, having never served on

7

any POST committees, having never written or even taught any of the LD's he cites in this case, he claims that "suicidal ideation" is "*implicit"* in LD37 despite any such actual language to that effect. [RT:76:19-25]. Once again, this is a typical tactic of Mr. Clark to offer his completely unsupported opinion on matters for which he has zero foundation unless challenged.

If the Court somehow permits Roger Clark to offer "expert" opinions on any issues in this case, he is a master at pontificating on matters on which he has no expertise and, very simply, he does not possess the credentials required of an expert in FRE 702." As such, the Court is respectfully urged to exercise extreme care in its critical role as "gatekeeper" so as to not allow him to simply become an unqualified "mouthpiece for the expression of one party's version of events." *Lippe, supra. 287 F.Supp.3d at 1282.*

### 5. CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court issue an *in limine* Order either excluding Roger Clark from rendering any opinions in this case or, at a minimum, carefully limiting his testimony to only those few matters, if any, on which he is qualified under the federal rules.

DATED: May 15, 2020　　　　　　　　　　FERGUSON, PRAET & SHERMAN
　　　　　　　　　　　　　　　　　　　　A Professional Corporation

　　　　　　　　　　　　　　　By:　　/s/　Bruce D. Praet
　　　　　　　　　　　　　　　　　　Bruce D. Praet, Attorneys for
　　　　　　　　　　　　　　　　　　Defendants

8