1   Mack Staton, SBN 89277
    Jared M. Katz, SBN 173388
2   Rafael Gonzalez, SBN 210202
    MULLEN & HENZELL L.L.P.
3   112 East Victoria Street
    Post Office Drawer 789
4   Santa Barbara, CA  93102-0789
    Phone:  (805) 966-1501
5   Fax:  (805) 966-9204
    *mstaton@mullenlaw.com*
6   *jkatz@mullenlaw.com*
    *rgonzalez@mullenlaw.com*
7
8   Attorneys for Plaintiff Shane Horton, by his guardian ad litem Yvonne Horton

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  **SHANE HORTON, by his guardian ad litem YVONNE HORTON,** | ) **Case No. 2:14-cv-06135-SJO-PJW** |
| 14 | ) **PLAINTIFF'S OPPOSITION TO MOTION IN LIMINE NO. 1** |
|     **Plaintiffs,** | ) |
| 15 | ) |
|   v. | ) |
| 16 | ) **Date:  June 12, 2020** |
|     **CITY OF SANTA MARIA; SANTA** | ) **Time:  10:30 a.m.** |
| 17  **MARIA POLICE DEPARTMENT; MARC SCHNEIDER; ANDREW** | ) **Ctrm:  10-A** |
| 18  **BRICE; JEFFREY LOPEZ; ELIGIO LARA; DAVID CULVER;** | ) |
| 19  **AND DOES 1-10, INCLUSIVE,** | ) |
| 20      **Defendants.** | ) |
| 21 | ) |

22   **I.      INTRODUCTION**

23          This case concerns the attempted suicide by Plaintiff Shane Horton

24   ("Plaintiff") while in custody at the Santa Maria Police Department ("SMPD").

25   Despite being advised of Plaintiff's deteriorating mental condition, Plaintiff was

26   left unattended for over 27 minutes after, on video, he removed a belt, fed it

27   through the cell door bars and hanged himself, causing irreversible brain damage.

28   The attempted hanging was captured on the SMPD surveillance cameras that also

contained audio.  They are time sequenced.  The incident occurred on December 29, 2012.

Plaintiff will prove that defendants violated his 14th Amendment right to be safeguarded from injury and his State law right to medical care while in custody. The defendants, City of Santa Maria and SMPD, collectively violated these rights.

Defendants' couch their motion as a motion to exclude subsequent policy changes and other post-incident evidence that is harmful to their defense, seeking to sweep everything under the umbrella of Federal Rule of Evidence 407.  Their motion is overly broad.  Specifically, they seek to exclude the following evidence:

1.     Following Plaintiff's hanging incident, the SMPD changed their policy to provide that officers "shall" remove belts from prisoners rather than that they "should" remove belts from prisoners.  While this may have been a subsequent remedial measure, there are exceptions to the rule, discussed below.

2.     Defendants seek to exclude evidence of an audit and recommendations made by the OIR Group on May 6, 2014, that is critical of the SMPD.  See Dkt. 39-1.  This is not a subsequent remedial measure.

3.     In the days following the incident, SMPD Commander Ritz visited with Plaintiffs' parents and apologized to them, saying that a mistake had been made and that the City would make things right.  This is not a subsequent remedial measure, nor is it a settlement communication as Defendants contend.

4.     Additionally, although it is not post-incident evidence but pre-incident evidence, Defendants want to exclude evidence of their policy that was in fact in place at the time of the evidence granting officer discretion, i.e., the section 901.8.2 stating that officers "should" remove belts from prisoners.  See Dkt. 39-6 (policy manual excerpts).  These are important case facts that are inherent and integral to putting on the case.  There is no basis to exclude the

PLAINTIFFS' OPPOSITION TO MOTION IN LIMINE NO. 1

1  SMPD policy that was in effect at the time of the incident.

2       Defendants are overreaching and their motion should be denied.

3  **II.**     **DISCUSSION**

4       **A.**     **The Court Should Not Exclude Evidence Related to the SMPD**

5               **Policy in Place at the Time of the Incident.**

6       Defendants erroneously contend the Court already ruled the policy is

7  irrelevant to establishing liability based on the Court's order on summary

8  judgment filed on August 28, 2015.  Dkt. 46.  But the SMPD policy using the

9  word "should" and granting officer discretion whether to remove belts is directly

10  relevant to the issues to be presented to the jury, and it is integral to putting on

11  the case and being truthful about the factual context.  In the Ninth Circuit's 2019

12  opinion issued in this case on the Defendants' appeal of the summary judgment

13  order (Dkt. 78), in reviewing the Plaintiff's claim under 42 U.S.C. Section 1983

14  against the municipal defendants, the Ninth Circuit explained the following:

15       "[M]unicipal defendants may be liable under § 1983 even in
16       situations in which no individual officer is held liable for
     violating a plaintiff's constitutional rights.  As we gave have
17       previously acknowledged, constitutional deprivations may
     occur "not … as a result of actions of the individual officers,
18       but as a result of the collective inaction" of the municipal
     defendant.  *Fairly v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002).
19       "If a plaintiff establishes he suffered a constitutional injury *by*
20       *the City*, the fact that individual officers are exonerated is
     immaterial to liability under § 1983," regardless of whether
21       their exoneration is "on the basis of qualified immunity,
22       because they were merely negligent, or for other failure of
     proof."  *Id.* at 917 & n.4.  Here, a reasonable jury might be able
23       to conclude that Horton suffered a constitutional deprivation
24       "as a result of the collective inaction" of the Santa Maria Police
     Department, *id.* at 917, or of officers' adherence to
25       departmental customs or practices, *see, e.g.*, *Tsao v. Desert
26       Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012); *Long v. County of
27       Los Angeles*, 442 F.3d 1178, 1185-86 (9th Cir. 2006).

28       **For example, taking the facts in the light most favorable to**

1
2
3
4
5
6
7
8
9
10

**the plaintiff, a jury might find that the Santa Maria Policy Department failed to ensure compliance with its written policy of removing belts from detainees. The department's policy manual indicated that arresting or booking officers "should" remove jackets, belts, and shoes. But, according to Officer Schneider, the "should" was understood to be optional and, before December 29, 2012, when the incident occurred, the usual practice was not to remove belts. An independent audit of the Santa Maria Police Department, conducted shortly before the incident for unrelated reasons, confirmed that "many SMPD members had only a passing knowledge of Departmental policies, and that custody practices were "loose."** *Horton v. City of Santa Maria*, 915 F.3d 592, 604-605 (9th Cir. 2019) (bold emphasis added). Dkt. 78 at 21-22.

11
12
13
14
15
16
17
18

Hence, the SMPD policy is highly relevant to Plaintiff's ability to prove his section 1983 claim, as acknowledged by the Ninth Circuit. This applies not only to policy 901.8.2 but all of the policies that were in existence at the time. The officers' adherence or nonadherence to the policies that were in place including respecting handling prisoners and also the departments' adherence to policies in place related to training are all directly relevant to the question of indifference to be presented to the jury, entirely consistent with the Ninth Circuit's opinion.

19
20
21
22
23
24
25
26
27
28

The policy that was in place at the time is also evaluated and a foundation for the opinions of Plaintiff's expert witnesses. For instance, one of Plaintiff's retained experts is Reinhardt J. Schuerger, who will testify on police practices, standards, and training. His report is attached as Exhibit A. In Mr. Schuerger's analysis, at pages 11-20 of his report (and in his testimony), he relies on numerous sections of the SMPD policy manual to support his opinions concerning the manner in which the department handled Plaintiff, the inadequate customs and practices of the department, the officer's indifference towards the policies that were in place at the time, and the failure of training by the department. Consistent with the Ninth Circuit's opinion, Mr. Schuerger opines,

-4-

1    in part, that the SMPD was indifferent towards its own policies and perpetuated

2    an atmosphere of indifference.  See, e.g., Opinions 7 and 8 at p. 24 of his report.

3    Further, the policies are relevant to show that nowhere in there was there

4    anything related to a suicide prevention plan or training for officers for the same.

5        **B.**    **The Court Should Not Exclude Evidence Related to the**

6            **Subsequent Changes of the SMPD Policy.**

7          Defendants contend that the SMPD's subsequent change in their policies to

8    require the removal of belts should be excluded as a subsequent remedial

9    measure pursuant to Federal Rule of Evidence 407.  Indeed, the Court

10   acknowledged this issue in footnote 1 on page 3 of the August 28, 2015 Order.

11   Dkt. 46 at 3, fn. 1.

12         Rule 407 however provides that the Court may admit such evidence for a

13   purpose other than proving negligence or culpable conduct, "such as

14   impeachment or – if disputed – proving ownership, control, or the feasibility of

15   precautionary measures."  Here, the subsequent change in the SMPD policies

16   should be admissible for these reasons.  For instance, SMPD Chief Martin

17   testified that he knew that "belts are certainly a possibility" for those "who want

18   to commit suicide" and that "most jails don't allow you to bring your belt in."

19   Dkt. 46 at 3, fn 1.  Plaintiff should be permitted to show that it was feasible for

20   the SMPD to have used the word "shall" instead of "should," particularly given

21   the custom and practice of not removing belts and the department's "loose"

22   custody practices, and the department's inattentiveness to enforcement of and

23   training about such things.  Plaintiff should be permitted to use this evidence to

24   establish it was feasible for the SMPD to be more vigilant in updating and

25   enforcing its own policies but the fact that it did not reflects its collective action

26   violating Plaintiff's constitutional rights.  This is entirely consistent with the

27   Ninth Circuit's holding that there is a jury question about whether Plaintiff's

28   constitutional rights were violated by the collective inaction of the department

1   and its officers.

2      **C.    The Court Should Not Exclude Evidence Related to the OIR**

3           **Group Audit.**

4        For the same reasons as discussed above in connection with the SMPD

5   policy, the OIR Group Audit is also relevant and admissible.  The Ninth Circuit's

6   opinion, cited above, specifically references the OIR Group Audit as a piece of

7   evidence relevant to Plaintiff showing that the municipal defendants are liable as

8   a result of collective in action or for the officers' adherence to certain

9   departmental customs and practices.  The OIR Group Audit is not a subsequent

10  remedial measure.  The audit began in early 2012, before the incident in question.

11  It is a report of investigative findings of past practices and it can be used in a

12  manner consistent with the Ninth Circuit opinion in this case.  Here, the practice

13  of failing to take belts and the general lack of knowledge of the departmental

14  policies, coupled with the failure for of training, is all evidence supporting the

15  Plaintiffs that should be admitted.  This is evidence that should be admitted for

16  the jury and for Plaintiff's experts to rely on where appropriate in support of their

17  expert testimony.

18     **D.    The Court Should Not Exclude Evidence Related to Commander**

19          **Ritz's Remarks.**

20       Defendants erroneously contend the Court already ruled the policy is

21  irrelevant to establishing liability based on the Court's Order on summary

22  judgment.  Commander Ritz came to visit Plaintiff's parents as a high ranking

23  employee, representative and agent of the SMPD.  His comments are relevant

24  and admissible as party admissions of the municipal defendants.  Fed. Rule Evid.

25  801(d)(2).  Commander Ritz's comments cannot fairly be construed as an offer of

26  compromise under Federal Rule of Evidence 408, as Defendants contend.

27  Plaintiff's parent has testified to the statements made by Commander Ritz.

28  Whether or not Commander Ritz denies his statements or the extent of his

1   authorization to speak on behalf of the SMPD are fact issues for the jury.

2   Moreover, Plaintiffs conclusion that Commander Ritz will be unavailable to

3   testify at trial is unavailing.  Commander Ritz was previously deposed in this

4   action and his deposition testimony is available.  Defendants can make

5   appropriate arrangements to have him appear at the trial.  He should not be

6   excluded to the prejudice of Plaintiff.

7   **III.   CONCLUSION**

8        Defendants' Motion in Limine No. 1 should be denied.

9

10  Dated:   May 22, 2020                    MACK S. STATON
                                            JARED M. KATZ
                                            RAFAEL GONZALEZ
11                                          MULLEN & HENZELL L.L.P.

12

13                                          By: *Jared M. Katz*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION IN LIMINE NO. 1