# EXPERT REPORT OF REINHARDT J. SCHUERGER JR.

PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(B)

## HORTON V CITY OF SANTA MARIA

November 8, 2019

Expert Report of Reinhardt J. Schuerger Jr.                Horton v City of Santa Maria

## TABLE OF CONTENTS

I.     INTRODUCTION AND QUALIFICATIONS.................................  3.

II.    PURPOSE..........................................................................  4.

III.   SUMMARY.........................................................................  5.

IV.    OPINIONS..........................................................................  22.

V.     MATERIALS REVIEWED AND CONSIDERED.........................  24.

VI.    STATEMENT OF COMPENSATION......................................  26.

VII.   SIGNATURE......................................................................  26.

### ATTACHMENTS

A.     RESUME OF REINHARDT J. SCHUERGER JR.......................  27.

2

Expert Report of Reinhardt J. Schuerger Jr.                          Horton v City of Santa Maria

## I.   INTRODUCTION AND QUALIFICATIONS

My name is Reinhardt J. Schuerger Jr.  I am a private consultant with
expertise in police practices, standards and training.  I have over 30 years of
experience as a law enforcement professional and trainer.

I am former lieutenant with the Los Angeles County Sheriff's department.
I served as a deputy sheriff for over 28 years until I retired in May 2015.  During
that period of time, I worked a variety of positions that included, in part, working
as a custody deputy, custody training officer, patrol deputy, patrol station jailer,
field training officer, narcotics investigator, custody supervisor, patrol supervisor,
narcotics supervisor, internal criminal investigations sergeant investigator,
custody manager, patrol manager, training manager, and Professional
Development Division Chief's executive aide tasked, in part, with conducting
sensitive administrative and criminal investigations at the direction of the
Department's Chief Executive.  I was involved in police training and citizen
complaint, administrative and criminal investigations.

From September 2011 to June 2012, I worked as a Senior Police
Advisor for the United States Department of State, Bureau of International
Narcotics and Law Enforcement Affairs, Police Development Program Iraq.  I
served as a law enforcement subject-matter expert and advisor to the Senior
Executive Police Advisor on law enforcement affairs and represented the U.S.
Embassy and the Bureau of International Narcotics and Law Enforcement
Affairs in interactions with key Iraqi government officials and with senior
leadership of the U.S. Mission on police and law enforcement matters.  I was
the Police Team Leader responsible for police development in the four
Southern Provinces of Iraq based in the Basra Province at the U.S. Consulate
General Basra.  My duties included advising the Provincial Chiefs of Police
and their diverse Directorates on strategies for their development into a
modern police force adhering to international policing and investigative
standards.  I planned, developed, implemented, monitored, and evaluated
police senior leadership development and other targeted INL assistance

3

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

projects that supported the Iraq Ministry of Interior's strategic plan for police development and assistance in Iraq.

From October 2010 through August 2011, I worked as an embedded Law Enforcement Professional with the United States Army at Fort Hood Texas and in Iraq and Afghanistan. I advised and assisted US Army units and Iraq and Afghanistan Army and Police and planned, delivered, and led training on street-level counter-gang and organized crime investigative tactics, techniques and procedures that included arrests, detentions and prosecutions

I have been a California Peace Officer's Standards and Training Commission Master Instructor since 1996. I taught criminal justice courses as an adjunct professor for the University of Phoenix in their College of Criminal Justice and Security from June 2008 to September 2012.

My experience, training and background are more fully described in my resume that is attached as Attachment A. I have not provided expert testimony in the past 4 years.

## II. PURPOSE

Mack Staton, Tom Girardi, Robert Finnerty and Dave Lira who are counsel for the plaintiffs in this case, have retained me to provide expert testimony in this case. This report and my investigation concern Santa Maria Police Department's issues involved in this litigation. The areas of concern include training, supervision, management, and Santa Maria Police Department policing practices and standards.

My testimony is based on my expertise as a law enforcement professional, my expert knowledge of law enforcement standards, my review of materials provided and listed below that included my review of Santa Maria Police Department reports, video and audio recordings and their respective transcripts from the incident on December 29, 2012, court filings in this action and transcripts from depositions taken in this case of representatives from the Santa Maria Police Department.

4

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

### III.    SUMMARY

The following is a summary of the incident involved in this litigation from
the arrest of Shane Horton until Officer Andrew Brice found Mr. Horton
unresponsive in the *Temporary Holding Cell* and includes observations from my
review of the materials listed below:

On December 29, 2012, Santa Maria Police Officer Andrew Brice arrested
Shane Horton in the City of Santa Maria for committing vandalism when he
stabbed a male friend's tire as his girlfriend began to leave with him.[1]  During
Officer Brice's contact with Mr. Horton, Officer Brice formed the opinion Mr.
Horton was acting abnormal.[2]  Officer Brice stated Mr. Horton was dismissive of
his actions that led to his arrest and was extremely cooperative to the point his
behavior caused Officer Brice to be concerned for his safety and be on guard for
an attack from Mr. Horton.  However, Officer Brice did not believe Mr. Horton's
abnormal behavior was indicative of a mental disorder.[3]

Even though Officer Brice felt Mr. Horton was a dangerous threat, he did
not share his officer safety concerns with any other Santa Maria Police
Department personnel while in the field or at the Santa Maria Police Department
Station.[4]

While at the location of Mr. Horton's arrest, Officer Brice had Officer
Duane Schneider transport Mr. Horton to the Santa Maria Police Department
*Temporary Holding Facility*.[5]  Officer Brice did not share his officer safety concern
regarding Mr. Horton's abnormal behavior with Officer Schneider.[6]

Officer Schneider transported Mr. Horton to the Santa Maria Police
Department Temporary Holding Facility and conducted a search of Mr. Horton in
the hallway of the Temporary Holding Facility prior to placing him into the
Temporary Holding Cell.  During the search and throughout his contact with Mr.
Horton in the Temporary Holding Facility, Officer Schneider had his firearm in his

---

[1] Santa Maria Police Department Family Violence Report # 2012R-12667
[2] Deposition - Andrew Brice, page 63
[3] Deposition - Andrew Brice, page 64
[4] Deposition - Andrew Brice, page 66
[5] Santa Maria Police Department Family Violence Report # 2012R-12667
[6] Deposition - Andrew Brice page, 66

5

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

holster.[7]  Officer Schneider unhandcuffed Mr. Horton and directed him into the Temporary Holding Cell while Mr. Horton still wore three belts a leather vest, a zip-up hoodie sweatshirt, large metal septum ring and other jewelry, knit hat, shirt, pants and shoes.  While the cell door was open and Mr. Horton's hands were not restrained, Officer Schneider had Mr. Horton remove his hat for him to search.  Officer Schneider returned the hat, closed the cell door and secured Mr. Horton in the Temporary Holding Cell.[8]

At approximately 7:55 a.m., Mr. Horton asked Officer Schneider, if he had to leave.[9]  Officer Schneider advised Mr. Horton if he needed anything there was a video camera in the cell and if Mr. Horton waved at the camera someone would come over to the Temporary Holding Cell to determine why he was waving.[10] Officer Schneider stated in his deposition that he just told prisoners this advisement to relax them, but no one was assigned to monitor the camera in the Temporary Holding Cell.[11]

Mr. Horton told Officer Schneider he was a little anxious and he would really like to speak to someone, not a therapist.  Officer Schneider told Mr. Horton they could talk and then told Mr. Horton to go ahead.  But Officer Schneider interrupted and began talking to Mr. Horton instead of listening to find out what Mr. Horton wanted to tell him.[12]

Mr. Horton told Officer Schneider it had been a really rough three weeks for him, told him about his use of illegal narcotics and a recent bad experience he had with narcotics where he began freaking out. Mr. Horton asked Officer Schneider if he noticed where Mr. Horton had put a cigarette out on his face, but referred to it as a cut on his face.[13]

---

[7] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[8] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[9] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[10] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 5
[11] Deposition - Duane Schneider, pages 55, 66
[12] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 5, 6
[13] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 7, 8

6

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

Mr. Horton told Officer Schneider he had a couple beers and was buzzed. Officer Schneider acknowledged that he could tell.  Mr. Horton again told Officer Schneider about a bad experience with narcotics several years earlier that had been really frightening.[14]

Mr. Horton asked Officer Schneider if he was taking up his time and told him he would really like to talk to someone because it was like nobody listened.[15] Officer Schneider told Mr. Horton to relax and then Officer Schneider began talking instead of listening.  Mr. Horton commented about the hardships he suffered over the past two weeks that included being kicked out of his house and losing all his money.[16]

During their conversation, Officer Schneider asked Mr. Horton if he drank alcohol.  Mr. Horton replied he was a little buzzed.  He then stated he was more anxious than anything and indicated he was up all night working on music.[17] They continued to talk and Mr. Horton stated, "Since I was five until here, you know, it's been hell, honestly sir."[18] They continued talking about Mr. Horton's use of narcotics and a general discussion regarding the illegal narcotics trade.

At approximately 8:08 a.m. Officer Schneider asked Mr. Horton if he had any medical problems.[19]  Mr. Horton said he did not know of any medical problems he was real healthy.  However, Mr. Horton then told Officer Schneider he was feeling anxious and did not like being locked in a box or being locked in a cell.[20]

Officer Schneider did not ask any follow-up questions regarding Mr. Horton's medical problems and did not ask Mr. Horton whether he had any mental problems even though Mr. Horton had just told Officer Schneider in the

---

[14] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 9
[15] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 10
[16] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 10
[17] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 12
[18] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 15
[19] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[20] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 20

7

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

span of approximately 13 minutes that he wanted to speak to someone - twice, he was anxious - three times, he recently used alcohol - twice, he had a history of illegal narcotics use, had a recent bad experience with illegal narcotics, his past two to three weeks had been rough, he was kicked out of his house, and lost his money which as a cumulative group of issues in the span of 13 minutes would reasonably indicate Mr. Horton was expressing some mental distress.

When Officer Schneider asked about how Mr. Horton got around town. Mr. Horton again referenced the past three weeks being rough.[21]  Mr. Horton later mentioned he was frightened for his generation.  Mr. Horton then said to Officer Schneider that it had been two weeks and it was funny how fast the injuries on his face had cleared up.[22]

At approximately 8:14 a.m., Sergeant Marc Schneider walked into the Temporary Holding Facility hallway and stood approximately 12 feet away from Officer Schneider and the Temporary Holding Cell door while Officer Schneider finished talking to Mr. Horton.  Officer Schneider told Mr. Horton he was going to leave.  He told Mr. Horton to chill out, sit and if he needed something to look at the camera in the Temporary Holding Cell and wave, while Sergeant Schneider listened.[23]

Officer Schneider returned to the Temporary Holding Facility at approximately 8:20 a.m. and advised Mr. Horton he was leaving.  Mr. Horton told Officer Schneider once again he was really anxious.  Officer Schneider acknowledged Mr. Horton's comment and told him good luck and it will get better.

Between 8:22 a.m. and 8:25 a.m., Mr. Horton looked at the video camera in the Temporary Holding Cell and waved on four separate occasions.  At no time did anyone respond to the Temporary Holding Cell to determine why Mr. Horton had waved at the video camera.[24]

---

[21] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 21
[22] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 26
[23] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[24] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012

8

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

Officer Brice arrived at the Temporary Holding Facility at approximately 9:46 a.m. and contacted Mr. Horton in the Temporary Holding Cell. He told Mr. Horton that things had changed a bit.[25] Officer Brice took Mr. Horton out of the Temporary Holding Cell and walked him to the restroom and then to Interview Room South in the Temporary Holding Facility. Officer Brice had his firearm in his holster while escorting Mr. Horton in the Temporary Holding Facility and interviewing him in the Temporary Holding Facility Interview Room South. Mr. Horton was not handcuffed and sat unsecured in the chair beside the open door to the Temporary Holding Facility Hallway. Officer Brice sat inside the interview room with his back to the wall.[26]

Officer Brice told Mr. Horton he was being charged with vandalism and felony domestic violence and his bail was $25,000. Mr. Horton was concerned about how many potential years in prison he would receive if convicted on the domestic violence charge. Officer Brice tried to calm Mr. Horton by explaining his case still had to be filed. However, Mr. Horton was visibly concerned. Mr. Horton questioned Officer Brice about how his actions of stabbing a tire to prevent his girlfriend from leaving in a car with another man were not a normal reaction. Officer Brice repeated it was not a normal reaction.[27]

Officer Brice asked Mr. Horton if he had any medical problems. Mr. Horton said he did not. Officer Brice did not ask Mr. Horton a follow-up question of whether he had any mental problems even though Officer Brice had stated in his deposition that Mr. Horton had been acting abnormal.[28] Officer Brice stated in his deposition that he did not believe Mr. Horton's abnormal behavior was indicative of a mental disorder.[29]

Officer Brice told Mr. Horton he was going to have to remove all is jewelry when he got to the Santa Barbara County Jail. Officer Brice advised Mr. Horton he could take the jewelry out now or at the Santa Barbara County Jail. He did

[25] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[26] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility Interview Room South on December 29, 2012
[27] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility Interview Room South on December 29, 2012
[28] Deposition - Andrew Brice, page 63
[29] Deposition - Andrew Brice, page 64

9

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

not care.  Mr. Horton had several piercings with jewelry that included a large metal septum ring.[30]

Officer Brice returned Mr. Horton to the Temporary Holding Cell and helped him place a call to his mother, Yvonne Horton.  While Mr. Horton was on the phone with Ms. Horton, he asked Officer Brice to speak with her to explain how to post his bail.[31]  Officer Brice suggested to Ms. Horton that it was important to get Mr. Horton out and to make him work with her.  Otherwise, Officer Brice suggested, it would be best for Mr. Horton to stay in the Santa Barbara County Jail.[32]

Officer Brice asked Ms. Horton if she wanted him to call her back and he told her he would call her shortly.  He gave the phone back to Mr. Horton who continued to talk to Ms. Horton.  Mr. Horton asked Ms. Horton if she was going to post his bail.  He then repeated her apparent response of no.  Mr. Horton told Ms. Horton he understood.  He apologized, told Ms. Horton he loved her and said bye.  Mr. Horton called for Officer Brice to hang up the phone.[33]

Officer Brice told Mr. Horton they would be leaving as quickly as possible and Mr. Horton responded okay.[34] Officer Brice walked away from the Temporary Holding Cell at approximately 10:09 a.m.  At approximately 10:10 a.m., Mr. Horton removed his webbed material belt, looped it around the cell door bar, placed his head inside the loop and hung from his neck.  At approximately 10:14 a.m., Mr. Horton's body went still.[35]

Officer Brice wrote in his report that after hanging up the phone for Mr. Horton he went and called Ms. Horton from the report room.  Ms. Horton spoke to him at length about her concerns with Mr. Horton.  She explained to him that Mr. Horton had a history of mental illness and had been taken to Marian Hospital for

[30] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility Interview Room South on December 29, 2012
[31] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, pages 31, 32
[32] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, pages 32, 33
[33] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, pages 33, 34
[34] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[35] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012

10

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

drug use two weeks earlier.  Ms. Horton said Mr. Horton had been acting very bizarre lately.  She had tried repeatedly to get him held for a psychiatric evaluation, but had been declined because his actions were drug induced. According to her deposition testimony, Ms. Horton told Officer Brice she feared he was suicidal.  Officer Brice told Ms. Horton he would be "safe" in jail.  Ms. Horton was optimistic Mr. Horton would get the mental health assistance he needed through the judicial process.  Officer Brice wrote in his report that his conversation with Ms. Horton lasted approximately 10 minutes.  He then went and prepared for the prisoner transport to the Santa Barbara Jail.[36]

Based on the facts, Mr. Horton had recently been told he was being charged with felony domestic violence and vandalism, and his mother, Ms. Horton, was not going to post his bail coupled with Officer Brice's report[37] that Ms. Horton told him of her concerns that Mr. Horton was suicidal, Officer Brice's promise that Mr. Horton would be "safe", Ms. Horton's report that Mr. Horton had a history of mental illness and had been acting very bizarre lately, and Officer Brice had already formed an opinion that Mr. Horton's behavior on December 29, 2012, was abnormal, it would have been reasonable for Officer Brice to go check on Mr. Horton's welfare after talking to Ms. Horton on the phone in the report room.

At approximately 10:36 a.m., Officer Brice walked from the station parking lot into the temporary holding facility and asked Mr. Horton where his dog was. Once Officer Brice saw Mr. Horton hanging from the Temporary Holding Cell door, he immediately tried to rescue him, started first aid and requested assistance.[38]

**Santa Maria Police Department Policy**

The Santa Maria Police Department Policy Manual section 901.1 - Department Organization And Responsibility stated the following responsibilities for the temporary holding facility operations had been established: (a) Facility

---

[36] Santa Maria Police Department Family Violence Report # 2012R-12667
[37] Santa Maria Police Department Family Violence Report # 2012R-12667
[38] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012

11

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

Administrator - The Chief of Police shall be the facility administrator officially charged, by law, with the administration of the temporary holding facility; (b) Temporary Holding Facility Manager - The Support Division Commander will have the responsibility for planning, managing, administrative functions, review of the facility manual and the operations of the temporary holding facility; (c) Maintenance Manager - The Day Shift Lieutenant will be responsible for the physical maintenance, cleanliness and supply of the temporary holding facility; (d) Temporary Holding Facility Supervisor - The employee with 24 hour a day functional responsibility for the temporary holding facility will be the Watch Commander any other supervisor may provide assistance as needed; (e) Custodial Personnel - Custodial personnel shall be those on-duty sergeants, corporals, officers, investigators or other designated employees whose additional duties include the supervision of prisoners that are detained in the temporary holding facility.[39]

On December 29, 2012, the below listed Santa Maria Police Department Personnel had the following responsibilities for the Santa Maria Police Department's Temporary Holding Facility to include the Temporary Holding Cell, Interview Rooms and connecting hallway:

1. Facility Administrator - Chief Ralph Martin.  He was not at the Santa Maria Police Station on December 29, 2012
2. Temporary Holding Facility Supervisor - Sergeant Marc Schneider was on-duty during the incident on December 29, 2012.
3. Custodial Personnel - Officers Brice and Schneider were the custodial personnel while present with Mr. Horton at the Santa Maria Police Department's Station and Temporary Holding Facility.  Officer Brice was the arresting officer and Officer Schneider was the transporting officer.

Santa Maria Police Department Policy Manual section 901.1.2 - Supervision of Prisoners stated the arresting officer would be responsible for the supervision of the prisoner. This person would be designated by the Temporary

---

[39] Santa Maria Police Department Policy Manual (4-09 to present) labeled 2009/03/25 © 19952009 Lexipol, LLC.

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

Holding Facility Supervisor and must not leave the police building while prisoners are in custody. This person would not have other duties that could conflict with the supervision of prisoners.[40]

Since Officer Schneider transported Mr. Horton to the Santa Maria Police Department Temporary Holding Facility, he was responsible for the supervision of Mr. Horton until Officer Brice arrived at the Santa Maria Police Department Temporary Holding Facility or until Officer Schneider transferred his responsibility to supervise Mr. Horton to another officer or supervisor.

Officer Schneider told Mr. Horton he was leaving at approximately 8:20, but did not leave the station until approximately 8:39 a.m.  Between approximately 8:22 a.m. and 8:25 a.m., Mr. Horton looked at the video camera in the Temporary Holding Cell and waved on four separate occasions.  At no time did Officer Schneider or other Santa Maria Personnel respond to the Temporary Holding Cell to determine why Mr. Horton had waved at the video camera[41]

The arresting officer, Officer Brice arrived at the Santa Maria Police Department Temporary Holding Facility at approximately 9:46 a.m.  During the 67 minutes from approximately 8:39 a.m. to 9:46 a.m. since Officer Schneider left the Santa Maria Station, no Santa Maria Police Department officer, supervisor or other personnel contacted Mr. Horton and advised him they were responsible for his supervision.[42]

Santa Maria Police Department Policy Manual Section 901.2.1 - Supervision of Prisoners stated all prisoners, with the exception of intoxicated prisoners, should be visually checked no less than once every hour. Intoxicated persons should be checked at least once every half hour. This check will be conducted through direct visual observation without the aid of surveillance cameras.[43]

Between approximately 8:39 a.m. and 9:46 no officer, supervisor or other personnel went to the Temporary Holding Cell to conduct a direct visual

[40] Santa Maria Police Department Policy Manual (4-09 to present) labeled 2009/03/25 © 19952009 Lexipol, LLC.
[41] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[42] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[43] Santa Maria Police Department Policy Manual (4-09 to present) labeled 2009/03/25 © 19952009 Lexipol, LLC.

13

Expert Report of Reinhardt J. Schuerger Jr.                     Horton v City of Santa Maria

observation of Mr. Horton.  However, at approximately 8:48 a.m., Officer Nathan Totorica walked through the Temporary Holding Facility past the Temporary Holding Cell twice.  On his second pass by the Temporary Holding Cell, Mr. Horton asked Officer Totorica a question just as Officer Totorica prepared to walk out of the Temporary Holding Facility hallway through the parking lot door.  At approximately 9:03 a.m., Officer Totorica walked through the Temporary Holding Facility past the Temporary Holding Cell with an unhandcuffed female prisoner. He spoke with Mr. Horton as he walked past the Temporary Holding Cell.  Officer Totorica said he had not heard whether Officer Brice was on his way to the station yet and that he would get Mr. Horton some water.  At approximately 9:06 a.m., an unidentified officer yells into the Temporary Holding Facility Hallway that Officer Brice was on his way to the station.  Officer Brice arrived in the station parking lot at approximately 9:11 a.m.  However, he did not contact or conduct a direct visual check of Mr. Horton until approximately 9:46 a.m.[44]

Santa Maria Police Department Policy Manual Section 901.8.1 - Security stated that (a) At no time are firearms, deadly weapons or any type of explosive device, permitted within the confines of the temporary holding facility. Weapons should be properly secured in the lockers outside the entrance to the temporary holding facility.  An exception may occur only during emergencies upon approval of the Facility Administrator, Facility Manager or Watch Commander.[45]

While in the Temporary Holding Facility, Officer Schneider wore his firearm in his holster during his entire contact with Mr. Horton including while he searched and placed Mr. Horton into the Temporary Holding Cell.[46]  Officer Schneider's actions demonstrated his indifference for Santa Maria Police Department Policy Manual Section 901.8.1 - Security.

While in the Temporary Holding Facility and Interview Room South, Officer Brice wore his firearm in his holster.  Officer Brice walked Mr. Horton unhandcuffed and unsecured to the restroom and then to Interview Room South

---

[44] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[45] Santa Maria Police Department Policy Manual (4-09 to present) labeled 2009/03/25 © 19952009 Lexipol, LLC.
[46] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012

14

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

through the Temporary Holding Facility Hallway while he wore his firearm in his holster.[47]  Officer Brice's actions demonstrated his indifference for Santa Maria Police Department Policy Manual Section 901.8.1 - Security.

While in the Temporary Holding Facility, Officer Totorica wore his firearm in his holster.  Officer Totorica supervised and walked a female prisoner unhandcuffed and unsecured in the Temporary Holding Facility Hallway several times during this incident while he wore his firearm in his holster.[48]  Officer Totorica's actions demonstrated his indifference for Santa Maria Police Department Policy Manual Section 901.8.1 - Security.

Sergeant Schneider was present in the Temporary Holding Facility at approximately 8:14 a.m. when Officer Schneider and Officer Totorica were each in the Temporary Holding Facility Hallway wearing their firearms in their holster.[49]  There was no indication on the video footage that the officers being armed with their firearm was an unusual occurrence.  The camera angle did not provide a view of Sergeant Schneider's holster.  As a supervisor, Sergeant Schneider's apparent lack of concern that Officers Schneider and Totorica were armed demonstrated his and the Santa Maria Police Department's indifference for Santa Maria Police Department Policy Manual Section 901.8.1 - Security.

Santa Maria Police Department Policy Manual Section 901.8.2 - Receipt of Prisoners stated that the arresting and/or booking officer should:(a) Make a thorough search of all prisoners booked into the temporary holding facility. Female prisoners should be searched by female on-duty officers or other female staff whenever possible; (b) Inventory and record all property removed from the prisoner's person; (c) Secure property for safekeeping; (d) Remove all hazardous items from the prisoner's person; (e) Remove belts, shoes and jackets.[50]

Santa Maria Police Department Policy Manual section 106.3.2 - Definitions defined the use of "shall" in the policy manual was to indicate a

---

[47] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[48] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[49] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012
[50] Santa Maria Police Department Policy Manual (4-09 to present) labeled 2009/03/25 © 19952009 Lexipol, LLC.

15

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

mandatory action, and the use of "should (or may)" in the policy manual was to indicate a permissive or discretionary action.[51]

Law enforcement officers are allowed and expected to use discretion in the performance of their duties. However, one key-influencing factor in how an officer applies discretion is in consideration for the safety of officers and the public that include persons in the custody of law enforcement.

Officer Schneider stated in is deposition that he takes everything out of arréstees' pockets and anything that somebody could hurt them or an officer with.[52] Yet, Officer Schneider allowed Mr. Horton to enter the Temporary Holding Cell wearing three belts, a leather vest with metal studs attached throughout the vest, a zip-up hoodie sweatshirt and a large metal septum ring. The belt around Mr. Horton's waist was made of a webbed material and had a metal buckle, which commonly has a pointed or serrated piece used to secure the buckle on the webbed material. The two belts hanging around Mr. Horton's thighs were black leather type material with metal buckles. The majority of one belt was covered in metal spiked studs. The second leather belt had several large metal rings attached as well as a metal clasp and key attached.[53] Each of the items Officer Schneider allowed Mr. Horton to retain and wear is considered hazardous and dangerous in a custodial setting.

Officer Schneider had worked over nine and a half years with the Santa Maria Police Department at the time of this incident.[54] An experienced officer, Officer Schneider demonstrated an indifference for officer safety and the safety of Mr. Horton when he exercised his professional discretion and chose to not remove Mr. Horton's three belts, shoes, jacket and large metal septum ring, and when he directed Mr. Horton, an unsecured prisoner to search himself by removing his cap and showing his head while in the Temporary Holding Cell.[55]

---

[51] Santa Maria Police Department Policy Manual (4-09 to present) labeled 2009/03/25 © 19952009 Lexipol, LLC
[52] Deposition - Duane Schneider, page 35
[53] Digital Photographs, BATES 235-301
[54] Employee Profiles Bates 76
[55] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012

16

Expert Report of Reinhardt J. Schuerger Jr.                 Horton v City of Santa Maria

Officer Schneider's actions also demonstrated a lack of understanding and concern for the reason and necessity for Santa Maria Police Department Policy Manual Section 901.8.2 - Receipt of Prisoners subsections (d) and (e) that stated officers should remove all hazardous items from the prisoner's person and remove belts, shoes and jackets.[56]

Santa Maria Police Department Crime Laboratory Technician Angela Jorge conducted a search of Mr. Horton's clothing after the incident.  Technician Jorge found two empty plastic baggies inside Mr. Horton's interior left side pocket of his sweatshirt and leather vest and a brown substance on the left side pocket area.  Technician Jorge obtained samples of the brown substance.[57]  There were no laboratory test results from the sample provided at the time of this report. Digital pictures from of the Temporary Holding Cell show a Styrofoam cup with a brown substance in the bottom and what appeared to be a band-aid.[58]  There was no report provided indicating a sample of the brown substance was obtained and tested.  Therefore, there was no means to determine whether the brown substance possessed by Mr. Horton in his clothing and the brown substance in Mr. Horton's cell were contraband and/or the same brown substance.

Officer Brice indicated in his deposition that he believed Mr. Horton's behavior was abnormal and Officer Brice was watchful for an attack.[59]  Officer Brice did not share his opinion with Officer Schneider prior to directing him to transport Mr. Horton to the Santa Maria Police Department Temporary Holding Facility.  Once Officer Brice contacted Mr. Horton in custody in the Santa Maria Temporary Holding Cell and saw he was wearing three belts, a leather vest with metal studs attached throughout the vest, a zip-up hoodie sweatshirt and a large metal septum ring, Officer Schneider chose to not remove them.  Each of the items retained and worn by Mr. Horton is considered hazardous and dangerous in a custodial setting.[60]

---

[56] Santa Maria Police Department Policy Manual (4-09 to present) labeled 2009/03/25 © 19952009 Lexipol, LLC
[57] Santa Maria Police Department Crime Laboratory Examination Field Report #2012R-12667 written by Technician Angela Jorge
[58] Digital Photographs, BATES 235-301
[59] Deposition - Andrew Brice, pages 63, 64
[60] Digital Photographs, BATES 235-301

17

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

While Mr. Horton wore the above listed hazardous and dangerous items, Officer Brice directed him to walk unhandcuffed in the Temporary Holding Facility Hallway to the restroom and then to Interview Room South in the Temporary Holding Facility.  Inside the interview room Officer Brice sat inside the room and Mr. Horton sat unsecured in a chair beside an open door next to the Temporary Holding Facility Hallway.  Officer Brice had worked six years with the Santa Maria Police Department at the time of the incident.[61]  Officer Brice, an experienced patrol officer, demonstrated indifference for officer safety and the safety of Mr. Horton when he exercised his professional discretion and chose to not remove these hazardous or dangerous items from him.  Officer Brice's actions demonstrated a lack of understanding and concern for the reason and necessity for Santa Maria Police Department Policy Manual Section 901.8.2 - Receipt of Prisoners subsections (d) and (e) that stated officers should remove all hazardous items from the prisoner's person and remove belts, shoes and jackets.[62]

**Training**

The Santa Maria Police Department provided training through a field training program, briefings, and advanced officer training.  The Santa Maria Police Department Policy Manual Training Policy Section 208.1 - Purpose and Scope stated that it was the policy of the Santa Maria Police Department to administer a training program that would provide for the professional growth and continued development of its personnel.  By doing so, the Department would ensure its personnel possessed the knowledge and skills necessary to provide a professional level of service that met the needs of the community.[63]

The Santa Maria Police Department Policy Manual Field Training Officer Program Section 436.1 - Purpose and Scope stated the Field Training Officer Program was intended to provide a standardized program to facilitate the officer's transition from the academic setting to the actual performance of general law

---

[61] Employee Profiles Bates 74
[62] Santa Maria Police Department Policy Manual (4-09 to present) labeled 2009/03/25 © 19952009 Lexipol, LLC
[63] Santa Maria Police Department Policy Manual (4-09 to present) labeled 2009/03/25 © 19952009 Lexipol, LLC

18

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

enforcement duties of the Santa Maria Police Department.  It was the policy of
the Santa Maria Police Department to assign all new police officers to a
structured Field Training Officer Program that was designed to prepare the new
officer to perform in a patrol assignment, and possessing all skills needed to
operate in a safe, productive and professional manner.  The emphasis of the field
training program was patrol training not custody training.  Sergeant Silva stated
that the field training program did not require hands on performance for each
task.  If a filed training officer and a new officer discussed a topic, such as how to
identify a mentally distressed prisoner, that would be sufficient to complete the
training section.[64]

 The Santa Maria Police Department Policy Manual Briefing Training
Section 404.1 - Purpose and Scope stated briefing training was generally
conducted at the beginning of the officer's assigned shift.  Briefing provided an
opportunity for important exchange between employees and supervisors.  A
supervisor generally would conduct Briefing; however, officers may conduct
Briefing for training purposes with supervisor approval.  Briefing should
accomplish, at a minimum, the following basic tasks: (a) Briefing officers with
information regarding daily patrol activity, with particular attention given to
unusual situations and changes in the status of wanted persons, stolen vehicles,
and major investigations (b) Notifying officers of changes in schedules and
assignments (c) Notifying officers of new General Orders or changes in General
Orders (d) Reviewing recent incidents for training purposes (e) Providing training
on a variety of subjects (f) Service of subpoenas (g) Assigning District Attorney
follow-up requests.  Sergeant Silva said he could not estimate if there had been
briefing training on the topics of the temporary holding facility and the detention
of persons during the past ten years and there was no one who could.  Sergeant
Silva said there was not usually a record kept of briefing trainings.[65]

 Sergeant Jesse Silva stated Santa Maria Police Department Police
Officers received training in the detention of person and dealing with mental

---

[64] Deposition – Jesse Silva, page 29
[65] Deposition – Jesse Silva, page 33

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

health issues from 2002 through December 29, 2012 in the field training program and in briefing training and possibly similar training in the Basic Police Academy depending on when they attended the Basic Police Academy.[66]  Sergeant Silva indicated officers were provided discretion in their screening of mentally distressed persons and their discretion was a situational evaluation at the time of their contact.[67]  Officers were trained in the Field Training Program about how to react to warning signs a person detained has mental health problems.  An officer's reaction would be based on the individual situation.[68]

**Temporary Holding Facility**

Sergeant Silva indicated there were three holding cells in the Temporary Holding Facility.  These rooms included the room referred to in this report as the Temporary Holding Cell that Mr. Horton was placed in, Interview Room South and a second room similar to Interview Room South. [69] The Temporary Holding Facility that included the Temporary Holding Cell, Interview Room South, the third room and the hallway each have video surveillance cameras.  Sergeant Silva said the cameras were tools to provide situational awareness for what was going on in the station.  He did not know why they were originally installed.[70] No documentation was provided by the Santa Maria Police Department that defined the purpose or intended use of the video camera system, the reason the cameras were focused on the Temporary Holding Facility and the three included rooms, or outlined responsibility for monitoring them.

It is reasonable to acknowledge the cameras were installed for a purpose. Their installation in the custody environment implies the cameras were used to monitor prisoners and officers.  The significance of the monitors being placed in the lieutenant's office, sergeant's office and dispatcher's room implies there was a specific reason for installing the cameras.

---

[66] Deposition – Jesse Silva, pages 25, 26, 27
[67] Deposition – Jesse Silva, page 40
[68] Deposition – Jesse Silva, pages 53, 54
[69] Deposition – Jesse Silva, page 62
[70] Deposition – Jesse Silva, pages 63, 65

20

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

According to the State of California Code of Regulations Title 15. Crime Prevention and Corrections, in effect on December 29, 2012, a Temporary Holding Facility was a local detention facility constructed after January 1, 1978, and used for the confinement of persons for 24 hours or less pending release, transfer to another facility, or appearance in court.[71]

Chief Ralph Martin stated in his deposition that the Temporary Holding Facility building had been built in 1963 and therefore was exempt from the standards provided in the State of California Code of Regulations Title 15. Crime Prevention and Corrections.[72] However, a law enforcement chief executive would be remiss in their duties to the public and their personal if they did not, at a minimum, conform to the standards for the training and safety of their officers and the safety and care of their prisoners.

The State of California Code of Regulations Title 15 Crime Prevention and Corrections standard required Departments with Temporary Holding Facilities to provide jail supervisory training, custodial personnel training to include applicable minimum jail standards; jail operations liability; inmate segregation; emergency procedures and planning; suicide prevention; and maintain policy and procedures for contraband control and suicide prevention.[73]

**Mental Disorder**

Officer Brice stated he was trained in the recognition of signs and behaviors consistent with mental disorders that posed a threat from mentally ill persons, but was not trained to assess someone's mental health status.  He had no specific training courses in mental health disorders.[74]

Officer Schneider stated he had no formal training regarding recognizing a potentially suicidal arrestee.[75]  At approximately 8:08 a.m. Officer Schneider asked Mr. Horton if he had any medical problems.[76]  Mr. Horton said he did not know of any medical problems he was real healthy.  However, Mr. Horton then

---

[71] Minimum Standards for Local Detention Facilities Title 15, Crime Prevention and Corrections Division 1, Chapter 1, Subchapter 4, 2010 Regulations Effective September 19, 2012
[72] Deposition – Ralph Martin, page 46
[73] Minimum Standards for Local Detention Facilities Title 15, Crime Prevention and Corrections Division 1, Chapter 1,
[74] Deposition – Andrew Brice, page 63
[75] Deposition – Duane Schneider, page 48
[76] Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012

21

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

told Officer Schneider he was feeling anxious and did not like being locked in a box or being locked in a cell.[77]

Officer Schneider did not ask any follow-up questions regarding Mr. Horton's medical problems and did not ask Mr. Horton whether he had any mental problems even though Mr. Horton had just told Officer Schneider in the span of 13 minutes that he wanted to speak to someone – twice, he was anxious - three times, he recently used alcohol - twice, he had a history of illegal narcotics use, had a recent bad experience with illegal narcotics, his past two to three weeks had been rough, he was kicked out of his house, and lost his money which as a cumulative group of issues in the span of 13 minutes would reasonably indicate Mr. Horton was expressing some mental distress.

IV.   OPINIONS

The following expert opinions were based on my review of the materials provided in this litigation and my experience and knowledge as a law enforcement professional and police practices expert.

Opinion #1: It is my opinion the Santa Maria Police Department was negligent in and acted with deliberate indifference toward providing reasonable training on the safeguarding of arrestees/prisoners and how and when to reasonably and consistently exercise discretion in the removal of potentially hazardous or dangerous items such as belts, shoes and jackets.  Law enforcement officers are allowed and expected to use discretion in the performance of their duties.  However, one key-influencing factor in how an officer applies discretion is in consideration for the safety of officers and the public to include persons in the custody of law enforcement.

Opinion #2:  It is my opinion the Santa Maria Police Department perpetuated an atmosphere of little concern and acted with deliberate indifference with regard to the care of mentally distressed prisoners in the Temporary Holding Facility.  The Department chose to not implement a suicide

---

[77] Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, page 20

22

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

prevention plan as required for Temporary Holding Facilities built after January 1, 1978, they were exempt from the requirement; and did not reasonably train and ensure their officers understood their role and responsibilities in their interactions and recognition of prisoners who were mentally disordered or in mental distress.

Opinion #3: It is my opinion Officer Brice did not practice standard officer safety protocols and acted with deliberate indifference when he did not notify Officer Schneider about his officer safety concern that Mr. Horton presented a potential danger based on Officer Brice's evaluation of Mr. Horton's abnormal behavior in the field; did not secure his firearm when entering the Temporary Holding Facility; did not secure his firearm when escorting Mr. Horton; did not handcuff Mr. Horton when he escorted him to Interview Room South; and did not remove Mr. Horton's three belts, zip-up hoodie, leather vest, shoes and large metal septum ring and other jewelry when he initially contacted him at the Temporary Holding Cell.  Furthermore, he failed to check on Mr. Horton immediately after speaking with Ms. Horton not withstanding the reported concerns of Ms. Horton and his promise to her he would keep Mr. Horton "safe".

Opinion #4: It is my opinion Officer Schneider did not practice standard officer safety protocols when he did not secure his firearm when entering the Temporary Holding Facility; did not secure his firearm when he searched and secured Mr. Horton in the Temporary Holding Cell; did not remove and search Mr. Horton's knit hat prior to unhandcuffing and placing him in the Temporary Holding Cell; and did not remove Mr. Horton's three belts, zip-up hoodie, leather vest, shoes and large metal septum ring and other jewelry prior to placing him in the Temporary Holding Cell.

Opinion #5: It is my opinion Officer Totorica did not practice standard officer safety protocols when he did not secure his firearm when entering the Temporary Holding Facility; did not secure his firearm when he searched and secured a female prisoner in the Temporary Holding Facility; did not secure his firearm when escorting the female prisoner to the restroom; did not handcuff the female prisoner when escorting her.

23

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

Opinion #6: It is my opinion Sergeant Schneider did not practice standard officer safety protocols when he was present in the Temporary Holding Facility Hallway and allowed Officers Schneider and Totorica to possess their firearms.

Opinion #7:  It is my opinion the Santa Maria Police Department was inconsistent and deliberately indifferent in their supervision and management of the Santa Maria Police Department Temporary Holding Facility as demonstrated by Sergeant Schneider's deliberate indifference to the Department Policy Temporary Holding Facility Procedures Section 901.8.1 - Security when he was present in the Temporary Holding Facility Hallway and allowed Officers Schneider and Totorica to possess their firearms.

Opinion #8: It is my opinion the Santa Maria Police Department had an organizational and deliberate indifference toward their Department policies and State laws governing Temporary Holding Facilities.  Chief Martin's outlook that the Temporary Holding Facility was built in 1963 and therefore did not need to comply with the current standards, although correct, perpetuated an atmosphere of not caring.

V.    MATERIALS REVIEWED AND CONSIDERED

In preparing my report, I reviewed and considered the following materials and information in the formulation of the above opinions:

1.  Santa Maria Police Department Family Violence Report # 2012R-12667 written by Officer Andrew Brice, identification number 23000.

2.  Santa Maria Police Department Supplement Report # 2012R-12667 written by Corporal Jeffrey Lopez, identification number 18455.

3.  Santa Maria Police Department Crime Laboratory Examination Field Report #2012R-12667 written by Technician Angela Jorge, identification number 23794.

4.  Video and audio recording from the Santa Maria Police Department Temporary Holding Facility on December 29, 2012.

5.  Video and audio recording from the Santa Maria Police Department Temporary Holding Facility Interview Room South on December 29, 2012.

24

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

6. Deposition transcript of Officer Andrew Brice, identification number 23000, from February 5, 2015.

7. Deposition transcript of Sergeant Duane Schneider, identification number 21402, from February 6, 2015.  (Sergeant Duane Schneider was an officer during the incident on December 29, 2012)

8. Deposition transcript of Chief Ralph Martin from April 6, 2015.

9. Deposition transcript of Sergeant Eligio Lara, identification number 21023, from July 6, 2015.  (Sergeant Eligio Lara was a corporal during the incident on December 29, 2012)

10. Deposition transcript of Lieutenant Marc Schneider, identification number 18695, from July 6, 2015.  (Lieutenant Marc Schnieder was a sergeant during the incident on December 29, 2012)

11. Deposition transcript of Sergeant Jesse Silva from July 7, 2015.

12. Deposition transcript of Commander Craig Ritz from July 20, 2015.  (Commander Craig Ritz retired from the Santa Maria Police Department in May 2013)

13. Deposition transcript of Yvonne Horton from July 14, 2015.  (Shane Horton's mother)

14. Deposition transcript of John Norton from July 13, 2015.  (Shane Horton's stepfather)

15. First Amended Complaint for Damages Document 19 filed October 20. 2014

16. Employee Profiles Bates 73-78

17. Santa Maria Police Department Messaging History, BATES 178-234, for messages sent during the period from December 29, 2012 at 0012 hours to December 30, 2012 at 0602 hours.

18. Digital Photographs, BATES 235-301, taken as part of the arrest investigation and of the incident scene in the Santa Maria Temporary Holding Facility.

19. Santa Maria Police Department 11550 H&S Report # 2012R12668 written by Officer Nathan Totorica, identification number 23480.

25

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

20. Exhibit 2A, transcript of the Santa Maria Police Department Temporary Holding Cell video footage from December 29, 2012, Santa Maria Police Department Administrative Investigation #13-03, Police Department case #2012R1267.

21. Plaintiff's Initial Disclosures Case No. 2:14-cv-06135-SJO-PJW dated November 20, 2014.

22. Santa Maria Police Department Policy Manual (4-09 to present) labeled 2009/03/25 © 19952009 Lexipol, LLC. This was the policy manual in effect on December 29, 2012.

23. Santa Maria Police Department Audit Report May 6, 2014 from the OIR Group in May 2014.

## VI.    STATEMENT OF COMPENSATION

My professional fee for this litigation work is $225.00 per hour plus expenses. I was retained to review all materials relevant to this litigation to date, prepare this report and provide my expert opinion, I have been compensated my initial retainer and billed invoices for a total of $14,493.75.

It is my understanding that additional materials may be requested later. I would request this report be considered a preliminary report. Should any subsequent information be produced and materially affect or alter any of these opinions. I will submit a supplemental response or be prepared to discuss them during any scheduled deposition.

## VII.    SIGNATURE

I declare, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Signed this 8th day of November 2019, in Santa Clarita, California.

Reinhardt J. Schuerger Jr.

26

Expert Report of Reinhardt J. Schuerger Jr.          Horton v City of Santa Maria

ATTACHMENT A

**RESUME**

**Reinhardt Joseph Schuerger Jr.**
**311 N. Robertson Blvd. #286**
**Beverly Hills, CA. 90211**
**rein@windsonggroup.com**
**310-447-4271**

**EMPLOYMENT**
**Windsong Group**                                    **June 1997 to Present**
Consultant (www.windsonggroup.com)
Provide discreet and confidential business and personal consulting services to ensure our clients' global investigative, expert consultation and testimony, organizational development, and security needs are met.  Leadership consultant for domestic and international organizations, teams and individuals.  Services include, but are not limited to: analysis, evaluation, training, strategic development and planning, problem solving, implementing change with an emphasis on culture.  Consult with public and private organizations to provide assistance in developing strategies for conforming to international policing and investigative standards specializing in resolving unique and unusual problems.  Technical advisor providing worldwide support services to the entertainment industry, news media, and writers.  International Security Consultant and Investigator providing a unique real world perspective as well as expertise in law enforcement and police practices, corporate espionage and internal investigations to government, corporate, small business, residential, and individual clients.

**LOS ANGELES COUNTY METROPOLITAN**           **August 2016 to December 2018**
**TRANSPORTATION AUTHORITY (LACMTA)**
**OFFICE OF THE INSPECTOR GENERAL**
SENIOR INSPECTOR GENERAL INVESTIGATOR
- Investigate fraud, waste, abuse and safety as it relates to the LACMTA, contractors, vendors and suppliers working in partnership with local, state and federal law enforcement agencies to ensure investigations are thorough and effective.

**LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**        **October 2015 to Present**
**PERSONNEL ADMINISTRATION DIVISION**
CIVILIAN INVESTIGATOR
- Investigate background references for law enforcement applicants and conduct pre-employment interviews of applicants.

**Los Angeles County Sheriff's Department**       **May 2015 to October 2015**
**Reserve Forces Bureau**
Reserve Deputy Sheriff

**Los Angeles County Sheriff's Department**       **October 2012 to May 2015**
**LIEUTENANT**                                       **(Honorably Retired)**
**Detective Division**

27

Expert Report of Reinhardt J. Schuerger Jr.                Horton v City of Santa Maria

**Fraud & Cyber Crimes Bureau**                                        **November 2014**
Cyber Lieutenant & SCHTTF Program Director
*Managed and ensured leadership and team excellence of the Los Angeles County Sheriff's Department's Cyber Investigation Center to include the Technical Operations Team, Identity Theft Teams and the Southern California High Technology Task Force (SCHTTF). Maintained task force integrity and partnerships with Federal, State and Local partners encompassing the Ventura, Orange and Los Angeles Counties. SCHTTF duties also included managing a $2 million budget.*

**Professional Standards Division**                                        **April 2013**
Executive Aide
Established the Los Angeles County Sheriff's Department's Professional Standards Division. Managed and ensured leadership and team excellence within the Professional Standards Division in support of the Division Chief, Division Commander, and Unit Commanders of the Advocacy Bureau, Internal Affairs Bureau, Internal Criminal Investigations Bureau, and Risk Management Bureau as well as provided leadership guidance for senior executives throughout the Department. Conducted sensitive criminal and administrative investigation. Managed the Divisions personnel and budget requirements for 230 sworn and civilian staff.

**Leadership and Training Division**
**Training Bureau**
**Professional Development Unit**                                        **October 2012**
Unit Commander
Managed and led the Education-Based Discipline Unit, LASD Deputy Leadership Institute, LASD University, Respect Based Leadership Program, Video Production Unit, and the Leadership and Professional Development Coordinator Program. LASD Coordinator for the Los Angeles Sheriff's Star Organization a benevolent foundation that provides college scholarships to current employees and their children. Managed leadership development courses in partnership with the Los Angeles County Department of Education for the Sheriff's Leadership Academy, an alternative high school that served at-risk youth in the city of Lynwood, California.

**U. S Department of State**                                        **September 2011 To July 2012**
**U. S. Bureau of International Narcotics and Law Enforcement Affairs (INL)**
Senior Police Advisor (GS-15)
Planned, developed, implemented, monitored, and evaluated police senior leadership development and other targeted INL assistance projects that supported the Ministry of Interior strategic plan for police development and assistance in Iraq. Served as a law enforcement and leadership subject-matter expert and advisor to the Senior Executive Police Advisor on law enforcement affairs and represented the U.S. Embassy and INL in interactions with key Iraqi government officials and with senior leadership of the U.S. Mission on police and law enforcement matters. Police Team Leader responsible for police development in the four Southern Provinces of Iraq based in the Basra Province at the U.S. Consulate General Basra. Duties included advising the Provincial Chiefs of Police and their diverse Directorates on strategies for their development into a modern police force adhering to international policing and investigative standards.

28

Expert Report of Reinhardt J. Schuerger Jr.          Horton v City of Santa Maria

**L3 Communications – MPRI**          **October 2010 to August 2011**
<u>Law Enforcement Professional (LEP 2)</u>
While embedded with the U. S. Army, advised and assisted US Army units and Iraq and Afghanistan Army and Police by applying a law enforcement counter-criminal perspective to the leadership and execution of counterinsurgency operations relevant to the supported battalion's area of responsibility in Iraq and Afghanistan. Planned, delivered, and led training on street-level counter-gang and organized crime investigative tactics, techniques and procedures (TTPs) in a war-fighting environment. Accompanied mounted and dismounted patrols on operations in hostile threat environments within the supported battalion's area of operation to instruct and mentor on appropriate law enforcement TTPs, and to provide immediate feedback and assistance. Assisted Unit staffs in the compilation and analysis of information concerning organized criminal groups, and advised in the investigative direction, attack, and neutralization of complex criminal groups and insurgency. This included developing, maintaining and working in cooperative partnerships with various Federal and Local agencies as well as Political and Community Leaders from several countries and their respective governmental agencies. Embedded in Al Amarah, Maysan Province, Iraq with the U.S. Army 3-8 CAV 3 BCT 1 CD. Embedded in Spin Boldak, Kandahar Province, Afghanistan with the U.S. Army 2-38 CAV 504 BFSB.

**Los Angeles County Sheriff's Department**          **September 1984 to October 2010**
**LIEUTENANT**          **(Honorably Retired)**
**Leadership and Training Division**
**Training Bureau**
**Professional Development Unit**          **April 2009**
<u>Unit Commander</u>
Managed the Education-Based Discipline Unit, LASD Deputy Leadership Institute, LASD University, Respect Based Leadership Program, Video Production Unit, and the Leadership and Professional Development Coordinator Program. LASD Coordinator for the Los Angeles Sheriff's Star Organization, a benevolent foundation that provides college scholarships to current employees and their children. Coordinator for the "Emerging Leaders Program" in partnership with the Los Angeles Urban League working with adult offenders, gang members and other community members. Developed and instructed leadership development courses in partnership with the Los Angeles County Department of Education at the Sheriff's Leadership Academy, an alternative high school that served at-risk youth in the city of Lynwood, California.

**Field Operations Region II**          **July 2006**
**Compton Sheriff's Station**
Detective Bureau Commander
Patrol Watch Commander

**Custody Division**          **April 2006**
**Pitchess Detention Center East Facility**
Custody Watch Commander

29

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

**SERGEANT**
**Detective Division**                                                April 2004
**Narcotics Bureau**
Sergeant Investigator
Detection Canine Crew Sergeant
Marijuana Enforcement Team Sergeant/Narcotics Investigator

**Office of the Undersheriff**                                        November 2000
**Internal Criminal Investigations Bureau**
Sergeant Investigator

**Field Operations Region II**                                       February 1999
**Century Sheriff's Station**
Patrol Sergeant
Community Oriented Policing High Impact Team Sergeant
**Custody Division**                                                 November 1998
**Pitchess Detention Center North County Correctional Facility**
Custody Sergeant

**DEPUTY SHERIFF**
**Detective Division**                                               November 1997
**Narcotics Bureau**
Investigator/Canine Handler

**Field Operations Region II**                                       May 1995
**Lennox Sheriff's Station**
Community Oriented Policing Team Leader
Civil Abatement Investigator

**Custody Division**                                                 February 1995
**North County Correctional Facility**
Custody Deputy

**Detective Division**                                               December 1991
**Narcotics Bureau**
Investigator
Tactical Response Force Deputy
Investigator/Canine Handler

**Field Operations Region II**                                       September 1991
**Operation Safe Streets Bureau (aka. Safe Streets Bureau)**
Gang Enforcement Team Deputy Sheriff

**Field Operations Region II**                                       December 1987
**Lennox Sheriff's Station**
Patrol Deputy
Jailer
Dispatcher
Watch Deputy and Watch Sergeant (acting)
Field Training Officer

30

**Exhibit A**
**Page 30 of 32**

Expert Report of Reinhardt J. Schuerger Jr.                    *Horton v City of Santa Maria*

**Custody Division**                                                    October 1986
**Mira Loma Detention Facility**
Custody Deputy
Custody Training Officer

**Custody Division**                                                     March 1985
**Pitchess Detention Center South Facility**
Custody Deputy
Custody Training Officer

**Training Bureau**                                                   November 1984
**Recruit Training Academy**
Deputy Sheriff Trainee

**Administrative Division**                                           September 1984
**Personnel Bureau**
Pre-Academy Deputy Sheriff Trainee

University of Phoenix                               June 2008 to September 2010
**Graduate School of Business and Management**
**College of Criminal Justice and Security**
Adjunct faculty

**A. A. Screen & Door**                              January 1989 to December 1991
Sole Proprietor/General Contractor

**Schuerger Construction Company**                   January 1986 to December 1995
General Construction Contractor

EDUCATION
**Doctor of Philosophy in Psychology with an Emphasis in Industrial and**
**Organizational Psychology (ABD)**            November 2011 - *In Progress*
Grand Canyon University, Phoenix, Arizona
Dissertation Research Topic: *"The Psychological Influence of Social Media*
*on Public Trust in Law Enforcement*"

**Certificate in Leadership Development**                              June 2007
Cornell University, Ithaca, New York
Johnson Graduate School Of Management

**Master of Arts in Organizational Leadership**                       May 2006
Woodbury University Burbank, California

**Bachelor of Science in Organizational Leadership**                  May 2005
Woodbury University Burbank, California

**Associate of Science in Administration of Justice**                 May 1996
College of The Canyons Santa Clarita, California

31

**Exhibit A**
**Page 31 of 32**

Expert Report of Reinhardt J. Schuerger Jr.                    Horton v City of Santa Maria

**SKILLS**
**California Peace Officers Standards and Training Commission (POST)**
**Certificates**
    Basic
    Intermediate
    Advanced
    Supervisory
    Management
**California POST Master Instructor**
    **California General Building Contractor B485377**
    **California Licensed Private Investigator PI 19654**
    **Bilingual –Spanish**

**PROFESSIONAL ORGANIZATIONS**
International Association of Chiefs of Police
World Association of Detectives
California Association of Licensed Investigators
California Narcotics Officers Association (Lifetime member)
American Psychology Association
Sheriff's Relief Association
Eagle and Badge Foundation (Lifetime member)

**PAST PROFESSIONAL ORGANIZATIONS**
Society of Industrial & Organizational Psychologist
Jerry Ortiz Memorial Boxing and Youth Fitness Gym, El Monte, California (Board of Directors)
International Association of Financial Crimes Investigators
Professional Peace Officers Association
Fraternal Order of Police, California Lodge 1
Professional Investigators of California (Board of Directors)
International Association of Bomb Technicians and Investigators
International Leadership Association
Association of Los Angeles Deputy Sheriffs California
Homicide Investigators Association
California Narcotics Canine Association
California Peace Officers Association

32